## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **Suzanne Jones,** | § | |
| | § | |
| **Plaintiff,** | § | **CAUSE NO. 4:21-cv-733** |
| | § | |
| **v.** | § | |
| | § | **COMPLAINT** |
| **H. Neil Matkin, in his personal and** | § | |
| **official capacity; Toni Jenkins, in her** | § | |
| **personal and official capacity; and** | § | |
| **Collin College,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## <u>PLAINTIFF'S COMPLAINT</u>

1.     Plaintiff Suzanne Jones (hereinafter "Plaintiff" or "Jones") complains of

Defendants H. Neil Matkin, Toni Jenkins, and Collin College (hereinafter "Defendants")

and she respectfully shows the Court as follows:

## <u>PARTIES</u>

2.     Jones is a natural person and a resident of Plano, Collin County, Texas, and at

all relevant times, was a Professor of Education at Collin College.

///

///

///

3.      Defendant Collin College is a junior college district organized under the laws of the State of Texas. Its principal office and campus are located in McKinney, Texas. Defendant Collin College may be served with process by and through its General Counsel, during normal business hours, at:

Office of the District President
Attn: General Counsel
Collin Higher Education Center
3452 Spur 399, Suite 400
McKinney, TX 75069

4.      At all relevant times, Defendant H. Neil Matkin ("Matkin") was the District President of Collin College.

5.      At all relevant times, Defendant Toni Jenkins ("Jenkins") was the Vice President of Collin College.

## JURISDICTION

6.      This action arises under the laws of the United States of America and Texas.

7.      The Court has jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims involve questions of federal law, including 42 U.S.C. § 1983 *et seq.* and provisions of the U.S. Constitution. Plaintiff respectfully requests the Court to exercise its supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over claims which arise under the common law and Constitution of the State of Texas that are so related to the federal claims in this action that they form part of the same case or controversy under Article III of the United States Constitution.

///

## VENUE

8.     Venue properly lies in this Court in accordance with 28 U.S.C. § 1391(b) and (c), because Defendant Collin College is headquartered in McKinney, Collin County, Texas, where the claims arose and, upon information and belief, Defendants Matkin and Jenkins are residents of Collin County, Texas, and subsequently subject to personal jurisdiction.

9.     Venue is proper in this district because Plaintiff's claims arose in Collin County, Texas.

## FACTUAL ALLEGATIONS

10.     Jones began working at Collin College as a Professor of Education in August 2001.

11.     On or about August of 2017, Jones signed her name on a published open letter supporting the removal of confederate monuments in Dallas, Texas. She listed under her signature, "Collin College."

12.     On or about August 24, 2017, James N. Barko ("Barko"), the Dean of Student and Enrollment Services, requested a meeting with Jones wherein Barko requested Jones remove "Collin College" from the published open letter she signed (hereinafter known as the "2017 Incident"). Provost Abe Johnson ("Provost Johnson") was also present.

13.     At no time during this correspondence did any administrator of Collin College discipline Jones or indicate that her use of her professional contact information for opposition to confederate monuments in Texas was grounds for nonrenewal of her teaching contract.

14.     On April 17, 2018, Jones signed a full-time faculty contract ("Hiring Agreement"). Pursuant to this Hiring Agreement, Collin College was to employ Jones as a full-time Faculty Member from August 15, 2018 to May 31, 2021. Attached hereto as **Exhibit A** is a true and correct copy of this Hiring Agreement.

15.     On or about March 11, 2020, the World Health Organization ("WHO") declared COVID-19 a pandemic.

16.     On or about March 23, 2020, Collin College moved to a remote learning format for all its teaching staff in response to the spread of COVID-19.

17.     On or about March 31, 2020, Texas Governor Greg Abbott issued an executive order declaring COVID-19 a public health disaster in the State of Texas.

18.     At the time, Jones was a member of the Collin College Faculty Council ("CFC"). In this uncompensated position, Jones received complaints throughout the summer of 2020 from several faculty members regarding their concerns about COVID-19's impact on their ability to teach.   On or about June 30, 2020, CFC issued a proposed plan regarding how Collin College may want to move forward with relation to reopening the campuses amidst the COVID-19 pandemic ("CFC document"). This document compiled scores of faculty concerns and proposals regarding Collin College's response to COVID-19. Jones signed the CFC document as a supporter. Attached hereto as **Exhibit B** is a true and correct copy of this CFC document.

19.     On or about July 2, 2020, Matkin issued a response to the CFC document, noting, without mentioning any specific faculty members, that he found it "ironic that some of the

chief proponents of closing our campuses and going fully online failed to speak to the faculty they were charged to represent."

20.     On or about July 14, 2020, Collin College issued its own COVID-19 plan. The plan rejected most of the proposals in the CFC document.

21.     On or about July 21, 2020, Jones signed her performance evaluation for the 2019-2020 school year. It indicated that she "has overwhelmingly positive student evaluations[,]" "is a dedicated professor with a deep passion for education[,]" and "is invested in the growth of her students and the overall progression of her department and the college." Her "Rating" was "Meets the Expected Level of Performance." Attached hereto as **Exhibit C** is a true and correct copy of this performance evaluation.

22.     In July 2020, Matkin awarded Jones the opportunity to select a student to be awarded the Engaged Faculty Scholarship. This is a significant honor at Collin College.

23.     On or about August of 2020, Jones returned to Collin College to teach in-person in full compliance with Collin College's fall semester reopening plan.

24.     In August 2020, Jones reached out to administrators Associate Dean Alexis Cade ("Associate Dean Cade"), Garry W. Evans ("Dean Evans"), and Jenkins regarding her questions and concerns about Collin College's reopening plans.

25.     On or about September 24, 2020, Jones asked the CFC about when she could announce the formation of a new chapter of the Texas Faculty Association ("TFA") at a CFC meeting. Attached hereto as **Exhibit D** is a true and correct copy of this request.

26.     On September 24, 2020, unknown to Jones at the time, Collin College scanned Barko and Jones' August 24, 2017 communication and placed it in Jones' file.

27.     The TFA is a non-profit organization formed in 1985 to protect the rights of higher education faculty. Its principal place of operation is in Texas.

28.     At the time, Jones served as the secretary and treasurer of Collin College's TFA chapter.

29.     On or about September of 2020, TFA listed Jones' personal contact information, including the fact she worked at Collin College, on the TFA website.

30.     On or about September 28, 2020, Garry W. Evans ("Dean Evans"), Collin College's Dean of Academic Affairs and Workforce, requested Jones remove any mention of Collin College and her contact information on the TFA website (hereinafter referenced as the "2020 Incident").

31.     When Jones asked why, Dean Evans stated that Collin College did not want to be associated with any "union."

32.     Jones forwarded Dean Evans' request to TFA, and within forty-eight (48) hours, TFA removed her details. During this time-period, Dean Evans contacted Jones four (4) separate times by phone to urge her to remove the listing.

33.     At no time during this correspondence did any administrator of Collin College discipline Jones or indicate that the use of her contact information for TFA was grounds for nonrenewal of her teaching contract.

34.     Other faculty have listed their personal contact information on association websites, including their professional email and employment at Collin College. However, upon information and belief, Collin College has not disciplined other employees for this.

35.     On or about December 15, 2020, some members of the TFA Chapter at Collin College submitted a proposal for a panel at Collin College's Faculty Development Conference in January 2021. The panel, entitled "Finding Your Voice," was expected to discuss academic freedom, free speech, and engagement with colleagues. This panel was initially approved and designated a date and time slot.

36.     Jenkins, acting in her capacity as the Vice President of Collin College, refused to provide a spot for the panel at the Faculty Development Conference.

37.     On December 15, 2020, Kat Balch ("Balch"), the President of CFC, emailed Jenkins asking why the panel had been pulled. In that email, Balch specifically named "Suzanne Jones" as a "strong" supporter of the panel. Jones later emailed Balch stating that singling her out by name appeared to be an attempt to scare her away from engaging in speech, and she also noted that Balch's email opened Jones up to retaliation.

38.     On or about January 28, 2021, TFA had its first recruitment meeting at Collin College. This had been previously publicized on social media.

39.     On January 28, 2021, Mary Barnes-Tilley ("Barnes-Tilley"), a provost for Collin College, and Floyd Nickerson ("Nickerson"), Chief Human Resources Officer at Collin College, met with Jones and informed her that Collin College would not be renewing her teaching contract.

40.     During this meeting, Barnes-Tilley provided Jones two reasons for her non-renewal: (1) Jones had challenged Collin College's reopening plans; and (2) on two occasions, the 2017 Incident and 2020 Incident, Collin College asked Jones to remove references to Collin College in publicly accessible websites.

41.     During this meeting, Barnes-Tilley told Jones that her Associate Dean, Dean, and Provost had signed off on her contract extension, but Matkin and Jenkins had authorized the non-renewal of Jones' teaching contract.

42.     Jones attempted to seek clarification during this meeting regarding the reasons for her non-renewal, but Barnes-Tilley directed her to use the grievance procedure for any questions or concerns she had regarding the non-renewal.

43.     On February 9, 2021, Jones sent a letter to the Collin College Review Resolution Panel ("RRP") requesting that it grant her grievance and reinstate her to the three-year contract she had approved for by her associate dean, dean, and provost.

44.     On February 10, 2021, Jones, by and through her counsel, filed a nine-page grievance ("Grievance") with thirty (30) exhibits consisting of over one hundred (100) pages against Collin College, Matkin, and Jenkins. Attached hereto as **Exhibit E** is a true and correct copy of this Grievance.

45.     The Grievance gave notice of the same allegations that are alleged in this complaint.

46.     In her Grievance, Jones alleged that Collin College, Matkin and Jenkins violated the United States Constitution's First Amendment, Texas Constitution, Article I, §§ 8 and 27, and her right to due process as established under *Service v. Dulles*, 354 U.S. 363 (1957) and its progeny.

47.     On February 12, 2021, Jones sent a letter to Nickerson, requesting that a neutral third party hear and investigate her grievance, as contemplated by Collin College policy,

DGBA (LOCAL), p. 3 (Nov. 7, 2019). Attached hereto as **Exhibit F** is a true and correct copy of Collin College's policy, DGBA(LOCAL). Nickerson denied her request.

48.     In response, the RRP initially granted Jones twenty (20) minutes to present the entirety of her Grievance.

49.     On March 4, 2021, Jenkins responded to Jones' Grievance in writing. In this response, Jenkins wrote that "Jones has demonstrated several characteristics of an excellent faculty member," "has had positive classroom evaluations and student evaluations," "stays current in her field," and "has been engaged in college service throughout her employment." Attached hereto as **Exhibit G** is a true and correct copy of this response.

50.     In this response, Jenkins acknowledged that Associate Dean Cade, Dean Garry Evans, and Provost Johnson recommended Professor Jones for a contract renewal.

51.     Despite these recommendations, Jenkins affirmed her decision to non-renew Jones, citing the 2017 Incident and 2020 Incident. Jenkins also cited Jones' social media posts wherein Jones discussed Covid-19.

52.     On March 8, 2020, Matkin responded to Jones' Grievance in writing. In this response, Matkin, like Jenkins, referenced the 2017 Incident and 2020 Incident as justifications for his decision to non-renew Jones. Attached hereto as **Exhibit H** is a true and correct copy of this response.

53.     On March 17, 2021, Jones planned to present her Grievance before the RRP. At this hearing, the RRP granted Jones' request that her presentation be extended to forty minutes, and it be postponed so that she could request witnesses.

54.     In advance of the next scheduled meeting, Jones submitted a formal request for Matkin and Jenkins to be witnesses. The RRP denied her request as "untimely" despite the fact that her hearing had been rescheduled for the purpose of allowing her to call witnesses. Attached hereto as **Exhibit I** is a true and correct copy of this formal request and its denial.

55.     On March 30, 2021, the RRP heard and recorded Jones' presentation of her grievance.

56.     On April 13, 2021, the RRP provided Jones their decision to deny her Grievance on all grounds alleged ("Decision"). The Decision noted that the RRP had private, ex parte conversations with Jenkins about Jones' nonrenewal. Attached hereto as **Exhibit J** is a true and correct copy of the Decision.

57.     On April 27, 2021, the Board of Trustees held a regular meeting. At this meeting, two (2) board members moved to consider the non-renewal of Jones at the next board meeting scheduled for May 25, 2021. *See* https://video.ibm.com/recorded/129783094 at 2:11:05 – 2:11:43. Attached hereto as **Exhibit K** is a true and correct copy of the Amended Minutes of Regular Board Meeting, April 27, 2021.

58.     The Board of Trustees was required to add the non-renewal of Jones to its agenda after two (2) board members moved to do so per the governing rules of the Board of Trustees BD (LOCAL) page 1. The Board of Trustees' Local Rules require that, "The Board Chairperson shall ensure that any topic that the Board or two Board members have requested to be addressed are either on the meeting agenda or scheduled for deliberation at an appropriate time in the near future. The Board Chairperson shall not refuse to assign a topic requested by two Board members…." The Board of Trustees violated its own rules

when it failed to put Jones' non-renewal on the Board's agenda for the May meeting. Attached hereto as **Exhibit L** is a true and correct copy of this set of local Board Rules.

59.     On May 5, 2021, Jones appealed the Decision to Executive Vice President, Sherry Schumann ("Schumann"), and requested the following findings: (A) the RRP violated Jones' due process rights by denying her opportunity to question Matkin and Jenkins; (B) the RRP applied the wrong standard of proof and was purely deferential to Jenkins' "verbal" and "written" statements; (C) the RRP completely failed to apply the appropriate analysis to assess whether Jones engaged in federally and state protected speech; (D) Jones was within her federal and state protected rights to place "external pressure" on Collin College; and (E) the claim that Jones was non-renewed for not specifying that she was not a representative of Collin College is purely pretextual. In Jones' appeal, she requested that her Grievance be granted, and that she be reinstated to the three-year contact she had already been approved for her associate dean, academic dean, and provost.

60.     On May 18, 2021, Schumann affirmed the Decision and denied Jones' appeal. Attached hereto as **Exhibit M** is a true and correct copy of this denial.

61.     On May 21, 2021, Jones, through her counsel, Nicholas J. Enoch ("Enoch"), formally submitted a written appeal of Schumann's perfunctory May 18 affirmance of the Decision, as well as her grievance before the Board of Trustees. Attached hereto as **Exhibit N** is a true and correct copy of this formal submission.

62.     On May 25, 2021, Enoch appeared before the Board of Trustees at their regular meeting and presented Jones' grievance. *See* https://video.ibm.com/recorded/129951289 at 2:00:05 – 2:03:30.

63.     The Board of Trustees failed to respond to Jones' grievance. This failure to respond equates to an upholding of the previous administrative decision per Collin College's policy DGBA (LOCAL), at page 7, attached as **Exhibit F**.

64.     On May 31, 2021, Jones' three-year teaching contract ended. At that time, Jones had accrued five hundred and sixty-four (564) hours of sick time.

65.     When Jones exercised her freedom of expression, as detailed above, it was related to matters of public concern—such as the spread of the COVID-19—that were outside the scope of her duties as a professor.

66.     Jones' interest in commenting on Covid-19—a matter of public concern—outweighs Collin College's interest in promoting efficiency.

67.     Collin College has not alleged that Jones' speech hindered operations or that her speech impeded her from carrying out her job. To the contrary, Jenkins described Jones as "an excellent faculty member" with "positive" student and classroom evaluations, who stays "engaged" and "current in her field."

68.     Defendants Matkin and Jenkins, as administrative supervisors of Jones, exercised influence and control over Jones' faculty rank, compensation, and assignments.

69.     By authorizing the non-renewal of Jones teaching contract for her association with TFA and her speech relating to the COVID-19, Defendants Matkin and Jenkins

subjected Jones to retaliation as the result of Jones exercising her rights to free expression under the United States and Texas Constitutions.

70.     In authorizing the non-renewal of Jones' teaching contract, Defendants Matkin and Jenkins acted under color of Texas law.

71.     Collin College has a policy stating the president and vice-president, here Defendants Matkin and Jenkins respectively, are final deciders for renewal of personnel. Attached hereto as **Exhibit F** is a true and correct copy of this policy.

72.     In authorizing the non-renewal of Jones' teaching contract, Defendants Matkin and Jenkins subjected Jones to an adverse employment action. *See Mooney v. Lafayette County School Dist.*, 538 Fed. App'x 447, 453 (5th Cir. 2013) ("[T]he non-renewal of [an assistant principal's] contract constituted a termination of employment, an adverse employment action.") (citing *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000)).

73.     Defendants Matkin and Jenkins' decision to non-renew Jones' teaching contract negatively affected Jones' prestige, opportunity for advancement, working conditions, income, and her ability to obtain outside employment.

74.     Jones' exercise of her right to freedom of expression and association caused Defendants Matkin and Jenkins to non-renew Jones' teaching contract.

75.     In their responses to Jones' grievance, Defendants Matkin and Jenkins were explicit that their decision to non-renew Jones' teaching contract was because Jones had made public comments regarding her concerns for the reopening of Collin College and for her association with TFA which they do not consider one which Collin College "celebrates and encourages affiliation with…." *See* **Exhibit H** at pg. 5 and **Exhibit G**.

76.     Defendants Matkin and Jenkins' decision to non-renew Jones' teaching contract was material in that it is likely to deter a reasonable, similarly situated employee from engaging in the type of expression and association that Jones engaged in.

77.     Defendants Matkin and Jenkins' decision to non-renew Jones' teaching contract constitutes retaliatory government action meant to inhibit Jones' free speech and assembly.

78.     Defendants Matkin and Jenkins' decision to non-renew Jones' teaching contract caused Jones' damages.

79.     Defendants Matkin and Jenkins' decision to non-renew Jones on the basis of her protected conduct was done maliciously.

80.     Collin College is led by a nine-member, elected Board of Trustees along with the district president, Matkin.

81.     Collin College's Board of Trustees regularly receives reports from agents, servants, and employees of Collin College, including reports from the college president, Matkin, regarding personnel matters, grievances, and lawsuits.

82.     Collin College's Board of Trustees received reports from agents, servants, and employees of Collin College, including reports from the college president, Matkin, about the protected speech that Jones engaged in, about the adverse actions taken against Jones, about the grievance filed by Jones, and about the allegations made by Jones in this lawsuit.

83.     Collin College's Board of Trustees heard Jones' Grievance on May 25, 2021, when Jones' counsel, Enoch, appeared before the Board at their regular meeting and argued Jones' grievance.

84.    The Board of Trustees, after learning about Jones' discharge directly by her appeal through the grievance process, failed to remedy the wrong.

85.    Collin College's Board of Trustees is a final policy maker and has enacted a policy of willful blindness that allows retaliation or alternatively, a policy of retaliation, whether the policy is formal or informal, by its knowledge of Jones' protected speech, by its refusal to act to correct the adverse actions taken against Jones, by its refusal to act to correct the matters that are the subject of the grievance filed by Jones, and by its refusal to correct the matters that are the subject of the allegations made by Jones in this lawsuit.

86.    Collin College's Board of Trustees, the College's final policymaker as a matter of law, officially adopted or promulgated a policy of retaliation that was the moving force behind the violation of Jones' First Amendment right to be free from retaliation.

87.    Collin College's Board of Trustees, the college's policymaker, had knowledge of this persistent, widespread practice of First Amendment retaliation.

88.    This practice of First Amendment retaliation was so persistent and widespread that it was the subject of prolonged public discussion and of a high degree of publicity.

89.    The Board of Trustees was personally involved in the deprivation of Jones' rights.

90.    The Board of Trustees was deliberately indifferent in managing its subordinates, Defendants Matkin and Jenkins.

91.    The Board of Trustees has delegated its final decision-making authority to subordinate employees of Collin College, including the college president, Matkin,

regarding personnel matters and grievances. Even when presented with the opportunity to override its subordinate employees, the Board of Trustees failed to take any action.

92.     From early 2015, Matkin has been the president of Collin College.

93.     Matkin regularly receives reports from agents, servants, and employees of Collin College, including reports on personnel matters, grievances, and lawsuits.

94.     Matkin was aware of these issues as he received reports from agents, servants, and employees of Collin College about the protected speech Jones engaged in and about Jenkins' adverse actions against Jones. He shared Jenkins' motive in taking this adverse action and was also the subject of Jones' Grievance, which contained the same allegations made by Jones in this lawsuit.

95.     Matkin had personal knowledge of the protected speech Jones engaged in as he took adverse actions and personally retaliated against Jones, including by the action to non-renew Jones' teaching contract.

96.     Matkin was personally involved in the deprivation of Jones' rights.

97.     Matkin is a final policy maker and has implemented a policy of retaliation, whether the policy is formal or informal, by engaging in adverse actions against Jones, refusing to correct the adverse actions taken against Jones, by refusing to correct the matters that are the subject of the grievance filed by Jones and by refusing to correct the matters that are the subject of the allegations made by Jones in this lawsuit.

98.     Even if Matkin were not a final decision maker, there is no absolute bar on liability for individuals who are not final decision makers in a First Amendment retaliation claim. *See Sims v. City of Madisonville*, 894 F.3d 632, 641 (5th Cir. 1998).

99.    Matkin's conduct violated clearly established federal law.

100.    Moreover, Matkin was informed as much vis-à-vis Jones' grievance.

101.    A reasonable public official in Matkin's position would have been expected at the time to know that his conduct violated clearly established federal law.

102.    Matkin failed to remedy the wrong.

103.    Matkin was deliberately indifferent in managing his subordinate, Jenkins.

104.    Starting January 2019 through roughly July 2021, Jenkins was a senior vice president of operations at Collin College. At an unknown date in 2021, Jenkins retired.

105.    At all relevant times, Jenkins regularly received reports from agents, servants, and employees of Collin College, including reports on personnel matters, grievances, and lawsuits. Jenkins also sought and received information via text messages about Jones' social media activity.

106.    Jenkins received reports from agents, servants, and employees of Collin College about the protected speech Jones engaged in, about the grievance filed by Jones and about the allegations made by Jones in this lawsuit. Jenkins engaged in the adverse actions taken against Jones.

107.    Jenkins had personal knowledge of Jones' protected speech, about the adverse action taken against Jones, including matters that were part of grievances filed by Jones and about the allegations in this lawsuit, because, in some instances, Jenkins directed the adverse actions against Jones and she personally retaliated against Jones, including by the action to non-renew Jones' teaching contract.

108.    Jenkins was personally involved in the deprivation of Jones' rights.

109.   Jenkins is a final policy maker and has implemented a policy of retaliation, whether the policy is formal or informal, by engaging in adverse actions against Jones, refusing to correct the adverse actions taken against Jones, by refusing to correct the matters that are the subject of the grievance filed by Jones and by refusing to correct the matters that are the subject of the allegations made by Jones in this lawsuit.

110.   Even if Jenkins were not a final decision maker, there is no absolute bar on liability for individuals who are not final decision makers in a First Amendment retaliation claim. *See Sims*, 894 F.3d at 641.

111.   Jenkins' conduct violated clearly established federal law.

112.   Moreover, Jenkins was informed as much vis-à-vis Jones' grievance.

113.   A reasonable public official in Jenkins' position would have been expected at the time to know that her conduct violated clearly established federal law.

114.   Jenkins failed to remedy the wrong.

115.   Jones has shown an affirmative causal link between Matkin and Jenkins' decision to nonrenew Jones and the Board of Trustees' affirmance of this decision.

116.   Matkin and Jenkins are not entitled to qualified immunity from suit under § 1983 because Jones has stated a violation of her First Amendment rights and Matkin and Jenkins' conduct was not objectively reasonable in light of clearly established law. *See Salas v. Carpenter*, 980 F.2d 299, 305-306 (5th Cir. 1992).

///

///

///

## FIRST CLAIM FOR RELIEF
### *Right to Free Expression and Association Under the First and Fourteenth Amendments of the U.S. Constitution*

117.    Jones re-alleges and incorporates by reference the paragraphs above, as if fully set forth herein.

118.    Jones makes a claim for relief under 42 U.S.C. § 1983 against Defendants Collin College, Matkin, and Jenkins to protect her rights to free expression and association as secured by the First and Fourteenth Amendments to the United States Constitution.

119.    Jones was deprived of her constitutionally secured First Amendment right to freedom of speech and expression and this deprivation occurred under the color of Texas law.

## SECOND CLAIM FOR RELIEF
### *Right to Free Expression and Association Under the Texas Constitution*

120.    Jones re-alleges and incorporates by reference the paragraphs above, as if fully set forth herein.

121.    The Texas Constitution provides for a cause of action against a public entity that violates the rights it guarantees to citizens of the state of Texas. *See Jones v. Memorial Hosp. System*, 746 S.W. 2d 891, 893-94 (Tex. App. 1988) ("We . . . hold that article 1, section 8 of the Texas Constitution constitutes an independent legal basis for a cause of action claiming an infringement of the right of free speech guaranteed by that section of the state constitution.").

122.    Jones makes a claim for relief under Article I, § 8 of the Texas Constitution against Defendants Collin College, Matkin, and Jenkins to protect her rights to free speech guaranteed by that section of the state constitution.

123.    Jones makes a claim for relief under Article I, § 27 of the Texas Constitution against Defendants Collin College, Matkin, and Jenkins to protect her rights to assembly as guaranteed by that section of the state constitution.

## THIRD CLAIM FOR RELIEF
### Right to Due Process under the Fourteenth Amendment of the U.S. Constitution

124.    Jones re-alleges and incorporates by reference the paragraphs above, as if fully set forth herein.

125.    Jones was deprived of her constitutionally secured Fourteenth Amendment right to due process when Defendants Collin College, Matkin, and Jenkins violated Defendant Collin College's policies guaranteeing faculty's freedom of speech and expression, and this deprivation occurred under the color of Texas law.

126.    Accordingly, Jones makes a claim for relief under the Fourteenth Amendment of the U.S. Constitution against Defendants Collin College, Matkin, and Jenkins to protect her rights to due process as guaranteed by the Fourteenth Amendment.

## FOURTH CLAIM FOR RELIEF
### Right to Due Course under the Texas Constitution

127.    Jones re-alleges and incorporates by reference the paragraphs above, as if fully set forth herein.

128.    Jones was deprived of her rights under Article I, § 19 of the Texas Constitution to due course when Defendants Collin College, Matkin, and Jenkins violated Defendant

Collin College's policies guaranteeing faculty's freedom of speech and expression, and this deprivation occurred under the color of Texas law.

129.    Accordingly, Jones makes a claim for relief under Article I, § 19 of the Texas Constitution against Defendants Collin College, Matkin, and Jenkins to protect her rights to due course of law guaranteed by that section of the Texas Constitution.

## PROXIMATE CAUSE

130.    Jones realleges and incorporates by reference the paragraphs above, as if fully set forth herein.

131.    All the illegal acts and omissions of Defendants described above, separately and/or collectively, constitute a direct and proximate cause of the injuries and damages set forth below.

## DAMAGES AND REMEDIES

132.    Jones realleges and incorporates by reference the paragraphs above, as if fully set forth herein.

133.    As described more fully in the preceding paragraphs of this Petition, the decision of Defendants Jenkins and Matkin to non-renew Jones' teaching contract was a direct cause of Jones' damages, including lost wages.

134.    As a result of the illegal retaliation and other conduct she complains of, Jones has suffered damages in the past and will continue to suffer such damages in the future, including lost wages, loss of employment benefits, pecuniary losses, damage to reputation, and any other damages or relief to which Jones is legally or justly entitled at law or in equity.

135.   The lost wages and employment benefits began in May of 2021, the end of Jones' previous contract, and continue to accrue as long as Jones is deprived of the opportunity to continue working as a professor at Collin College.

## ATTORNEYS' FEES

136.   Jones re-alleges and incorporates by reference the paragraphs above, as if fully set forth herein.

137.   It was necessary for Jones to secure the services of an attorney to prepare and prosecute this suit. Judgment for attorneys' fees through final judgment after appeal should be granted against Defendants and in favor of Jones for the use and benefit of Jones' counsel. In the alternative, Jones requests that reasonable attorneys' fees through final judgment after appeal be taxed as costs to be ordered paid directly to Jones' attorneys, who may enforce the order in the attorneys' own name.

138.   Jones is entitled to attorneys' fees pursuant to 42 U.S.C. § 1988, which provides in part that "[i]n any action or proceeding to enforce . . . section[] 1983 . . ., the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."

139.   Moreover, Jones is entitled to attorneys' fees in the event she prevails on claims under the Texas Constitution. A prevailing party in a Section 1983 action may recover reasonable attorney's fees at the discretion of the Court. 42 U.S.C. 1988; *see also Gates v. Collier*, 616 F.2d 1268, 1275 (5th Cir. 1980) ("[A]ttorney's fees should be awarded to the prevailing party [in a Section 1983 action] as a matter of course."); *Williams v. Thomas*,

692 F.2d 1032, 1036 (5th Cir. 1982) ("[A] party prevailing on a substantial claim that is pendant to a civil rights claim is entitled to a recovery of attorney's fees when the civil rights claim and the pendent claim arise out of a common nucleus of operative facts."); *Fort Gates v. Cathey*, 665 S.W.2d 586, 589 (Tex. App. 1984) ("And though a plaintiff brings a Section 1983 action and in the same action pleads a violation of State law, the plaintiff is entitled to attorney's fees even though he prevails only on the State law claim.")

## INJUNCTIVE RELIEF

140.   Jones seeks appropriate injunctive relief under 42 U.S.C. § 1983, including:

   a.   order for reinstatement to employment for Jones; and

   b.   orders for all promotions and other benefits that were illegally denied to Plaintiff as a result of the termination of her contract.

## PRE-JUDGMENT AND POST JUDGMENT INTEREST

141.   Plaintiff seeks pre-judgment and post judgment interest as allowed by applicable law.

## DEMAND FOR JURY TRIAL

142.   Jones hereby demands a trial by jury.

///

///

///

///

///

## **PRAYER FOR RELIEF**

FOR THESE REASONS, Jones respectfully requests that Defendants Matkin, Jenkins, and Collin College be cited to appear and answer and that upon a final hearing of this matter, that the Court enter judgment in favor of Jones and award to Jones:

A.  Compensatory damages – not including emotional distress – in an amount to be determined at trial;

B.  For an order reinstating Jones to employment as a Professor of Education with Collin College;

C.  For an order providing Jones all promotions and other benefits, including her five-hundred and sixty-four hours of accrued sick time, that were illegally denied to her as a result of the termination of her contract;

D.  For exemplary and punitive damages against Defendants Matkin and Jenkins, in their personal capacity, in a sum to be determined by the trier of fact;

E.  For reasonable attorneys' fees;

F.  For costs of suit; and

G.  For declaratory relief under the Federal Declaratory Judgment's Act, 28 U.S.C.A. § 2201(a), and for any other declaratory relief to which Jones may be entitled;

H.  For such other and further relief to which Jones may be entitled.

RESPECTFULLY SUBMITTED this 22nd day of September 2021.

Lubin & Enoch, P.C.

/s/ Nicholas J. Enoch._____
NICHOLAS J. ENOCH
Bar No. 24042618
Email: nick@lubinandenoch.com
CLARA S. ACOSTA
Bar No. 24115993
Email: clara@lubinandenoch.com
221 North Kansas Street, Suite 700
El Paso, Texas 79901
Telephone: 915-585-8008
Fax: 602-626-3586

ATTORNEYS FOR PLAINTIFF

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) Fed.R.Civ.Pro., Plaintiff demands that this matter be tried to a jury.

Respectfully submitted, this 22nd day of September 2021.

Lubin & Enoch, P.C.

/s/ Nicholas J. Enoch._____
NICHOLAS J. ENOCH
Bar No. 24042618
Email: nick@lubinandenoch.com
CLARA S. ACOSTA
Bar No. 24115993
Email: clara@lubinandenoch.com
221 North Kansas Street, Suite 700
El Paso, Texas 79901
Telephone: 915-585-8008
Fax: 602-626-3586

ATTORNEYS FOR PLAINTIFF