# EXHIBIT E

# Lubin & Enoch, P.C.

PHOENIX | DENVER | EL PASO

Nicholas J. Enoch
Also admitted in Arizona and Colorado

Clara S. Acosta
Also admitted in Arizona

Stanley Lubin *of Counsel*
Also admitted in Arizona

221 N. Kansas Street, #700
El Paso, Texas 79901
(915) 585-8008
Fax: (602) 626-3586

February 9, 2021

*Via online platform at Collin.edu this date:*

Review Resolution Panel
Collin College (Plano Campus)
2800 E. Spring Creek Parkway
Plano, TX 75074

      **RE:** **TSTA (Jones, Suzanne E. v. Collin College**
            **Our File No. 1858-079**

Dear Members of the Review Resolution Panel:

      Dr. Suzanne Jones ("Dr. Jones"), by and through undersigned counsel, hereby submits this brief, indicating the details of her complaints. On January 28, 2021, Collin College nonrenewed Dr. Jones' contract, despite her meeting all necessary qualifications. Herein she alleges that the facts and law support that this adverse employment action was taken in retaliation of her exercise of legally protected rights, namely the United States Constitution's First Amendment, Texas Constitution, Article I, §§ 8 and 27, and her right to due process as set forth in *Service v. Dulles*, 354 U.S. 363 (1957) and its progeny. Specifically, Collin College violated the First Amendment and the Texas Constitution by discriminating against Dr. Jones for her affiliation with the Texas Faculty Association ("TFA") organization and engaging in viewpoint discrimination by reprimanding her for being in this professional association. Moreover, Collin College has retaliated against Dr. Jones for supporting faculty's criticism of their reopening plans. Lastly, Collin College has violated *Service v. Dulles* by failing to abide by its own policies.

## I. FACTS

### A. Dr. Jones Engaged in Associational Speech by Way of Affiliation with TFA.

      Dr. Jones currently has a contract extending from 2018 to 2021. **Exh. A.** In the summer and fall and 2020, Dr. Jones was one of the faculty members at Collin College who formed a chapter of TFA. Dr. Jones' course load is focused on teaching pre-service K-12 teachers. The National Education Association ("NEA"), Texas State Teachers Association ("TSTA"), and TFA are amongst the largest professional organizations for such teachers. As a result, Dr. Jones joined TFA.

      TFA is a non-profit organization created to protect the rights of higher education faculty and support staff. It provides resources and skills to assist college and university employees whenever problems arise. Dr. Jones serves as the secretary and treasurer of the statewide TFA.

      In fact, in her 2020-2021 evaluation with Collin College, Dr. Jones indicated that one of her goals was to grow the Texas State Teachers Association – Aspiring Educators ("TSTA-AE"), a student organization, by ten percent (10%). TSTA-AE is an affiliated student chapter at Collin

Review Resolution Panel
February 9, 2021
Page **2** of **9**

College. The chapter provides professional development opportunities for students who expect to become public-school educators.

As it does with many other campuses that form chapters of TFA, TFA listed the campus as a chapter, including a link to Dr. Jones' personal email address. Tex. Faculty Ass'n, *Chapters*, archived at http://web.archive.org/web/20200925015328/https://texasfacultyassociation.org/chapters. On September 28, 2020, Collin College's Dean of Academic Affairs and Workforce, Garry W. Evans, called Dr. Jones. He asked that she remove the listing from TFA's website. When Dr. Jones asked why, Dean Evans stated Collin College did not want to be associated with any "union." Dr. Jones clarified that Texas obviously did not allow public employees to unionize so there would not actually be any confusion on the matter. He repeated the same position.

Dr. Jones clarified that she had no control over TFA's website posting and noted that many higher education institutions had not indicated any problem with the listing. **Exh. B.** After Collin College reaffirmed its discontent, Dr. Jones promptly reached out to TFA and requested they remove the listing, which they did. Although it took TFA only forty-eight hours to finalize the removal, Dean Evans called Dr. Jones four times during that time. **Exh. C.** (Sept. 28 at 4:34 pm, spoke for 19 minutes; Sept. 29 at 9:38 am, spoke for 5 minutes; Sept. 29 at 9:43 am, spoke for 7 minutes; Sept. 30 at 12:35 pm, spoke for 3 minutes).

At no point during this correspondence did Collin College indicate it was a significant issue, ask her to sign any disciplinary findings against her, or suggest that it amounted to grounds for non-renewing or terminating her contract. **Exh. C.**

Some members of the TFA Chapter at Collin College submitted a panel proposal for the Faculty Development Conference in January 2021. The panel was expected to discuss academic freedom, free speech, shared governance and colleague engagement. Last minute, the administration pulled the panel. Although Dr. Jones had not been one of the proponents of the panel, she did inquire as to why exactly it had been removed as it appeared that the panel met the theme of the Faculty Development Conference. On December 15, 2020, Kat Balch, the president of CFC, emailed Vice President Toni Jenkins to ask why the panel was pulled. **Exh. D.** In that email, Ms. Balch specifically named, among others, "Suzanne Jones" as a "strong" supporter of the panel. Ms. Balch forwarded her email and Vice President Jenkins' response to the CFC. Dr. Jones later emailed Ms. Balch, stating that it appeared the communication was an attempt to scare her away from engaging in speech. Dr. Jones also noted Ms. Balch's email opened Dr. Jones up to retaliation.

### B. Dr. Jones Engages in Speech Relating to Collin College's Protocols and Procedures for COVID-19.

Dr. Jones is a member of the Collin College Faculty Council ("CFC"). Dr. Jones is not compensated by Collin College for her work on CFC. In the summer of 2020, CFC was contacted daily by many faculty members about their concerns. Dr. Jones recalled that one faculty member reached out to express their belief that classes should be completely reopened in person and that masks should not be mandated. She shared his concern to the CFC as well as those who expressed

Review Resolution Panel
February 9, 2021
Page 3 of 9

opposing or similar thoughts. She, along with the other CFC members, took very seriously their duty to represent all their faculty constituents.

On June 30, 2020, CFC issued a proposed plan, with studies attached, regarding how Collin College may want to move forward with relation to reopening the campuses amidst the COVID-19 pandemic (hereinafter referred to as "CFC Proposal"). **Exh. E.** This document was prepared by Audra Heaslip, a fellow TFA and CFC member, and constituted a compilation of the multiple concerns that CFC had heard from more than 93 faculty members. Roughly 130 faculty and staff members signed on as supporters, including Dr. Jones.

On July 2, 2020, President Neil Matkin issued a response to the CFC proposal, acknowledging receipt and consideration of the document. **Exh. F.** In it, he oddly noted, "I find it ironic that some of the chief proponents of closing our campuses and going fully online failed to speak to the faculty they were charged to represent. We will fully explore this as time goes on." *Id.* In response to inquiries from the CFC and faculty, Vice-President Toni Jenkins agreed to create a task force to assess the best means by which to proceed with operation of Collin College in light of COVID-19.

On July 14, 2020, Collin College issued its COVID-19 plan, rejecting most of the CFC Proposal.

On July 21, 2020, Dr. Jones signed her performance evaluations, showing she met all components of her work. **Exh. G.** In August 2020, when the fall semester began, Dr. Jones complied fully with Collin College's reopening plan, teaching in person as required.

In August 2020, emails by President Matkin to the Collin College Board of Trustees revealed that he believed that the harm of COVID-19 is blown out of proportion and claimed that residents of Collin College were "over one hundred times more likely" to die from a motor vehicle accident than COVID-19. *See* Inside Higher Ed, A Facutly Death Miscommunicated, accessible at https://www.insidehighered.com/news/2020/11/24/college-president-faces-criticism-how-he-communicated-professors-death-covid.

In August 2020, Dr. Jones received an email from her associate dean, asking that she sign the portion of her contract extension that she was being rewarded. Some of Jones' colleagues were asked to come in person to sign off and were congratulated for their contract extension.

On September 25, 2020, during a meeting with CFC, Vice-President Jenkins stated that it supported its July 14th plan and refused to agree to creation of a COVID-19 tracker. **Exh. H.** In October 2020, a student and professor from Collin College passed away are a result of contracting COVID.

On January 26, 2021, President Matkin publicly issued the All-College Day video. In it, he stated:

> And COVID-19 will not be the last challenge we face as a team. Until we've reached all interested students and opened our doors wide for all to explore their potential, we

have work yet to be done. The Board of Trustees are absolutely committed to helping the college achieve its purpose, mission, and vision, and we want the college to be an exemplar for how to be a great college. Your engagement, your passion for our core values and your willingness to put your best efforts forward for our students every single day are absolutely essential. **I understand this level of commitment may not be for everyone. I get that. But that's exactly why I think that Collin College needs to be the exemplar institution of higher education. If you're not all in for Collin College, with respect I encourage you to consider where you want to be.**

Dr. Neil Matkin, Collin College District President, accessible at https://www.youtube.com/watch?v=3fkxe5_Fj3Q&list=PLNEEvpXn1HPt8PmcrjP045Fdm1xsane63&index=2. Dr. Jones, among others, considered this to be a chilling rebuke to faculty's criticism of how Collin College was operating in light of COVID-19. **Exh. I.**

### C. Collin College Non-Renews Dr. Jones for Associating with TFA and Speaking Out Against Their COVID-19 Protocols.

On January 28, 2021, Dr. Jones was called into a meeting with Provost Dr. Mary Barnes-Tilley. **Exh. J.** During that meeting, Provost Dr. Barnes-Tilley explained that Dr. Jones' associate dean, the dean, and provost had approved an extension of her contract. However, President Matkin and Vice President Toni Jenkins decided to deny it for two reasons. First, Provost Dr. Barnes-Tilley stated Dr. Jones was inappropriately challenging Collin College's COVID-19 plan and not supporting its reopening plans. Second, she referenced that Collin College had to ask her to remove the listing from the TFA website and a similar incident occurring in 2017. To Dr. Jones' knowledge, no incident relating to TFA took place in 2017. When Dr. Jones attempted to seek clarification during the meeting, Provost Dr. Barnes-Tilley interrupted and directed her to use the grievance procedure for any arguments or points she had.

Upon later reflection, Jones believed the referred 2017 incident regarded her signature on an open letter to the Dallas City Council to remove confederate monuments. As many of her other colleagues, she included her title and employment place on her signature. A colleague of Jones' also signed the open letter with his title and was never disciplined or warned by Collin College to never repeat the act. Moreover, in 2017, Dr. Evans was not a dean.

Dr. Jones later received a letter from Human Resources confirming the non-renewal of her contract. **Exh. K.**

### II. LEGAL ARGUMENT

### A. Collin College Cannot Non-Renew a Faculty Member's Contract for an Illegal Reason.

DMAB(LOCAL) (issued June 1, 2016) provides that contracts for full-time faculty members "will be renewed at the end of the contract term provided sufficient funds are available and approved by the Board and provided the District President or designee has not issued a notice of nonrenewal or termination." **Exh. L.** It is likely that Collin College will allege that Dr. Jones had no right to the

Review Resolution Panel
February 9, 2021
Page 5 of 9

renewal of her contract and is therefore not eligible for the protections provided by the United States and Texas constitutions.

In *Perry v. Sindermann*, the United States Supreme Court answered the question of whether a public employee's lack of contractual right or tenure right to re-employment alone defeats their claim that the nonrenewal of their contract violated the First and Fourteenth Amendments. 408 U.S. 593, 596 (1972). The Court made clear that even though a person may have no 'right' to a governmental benefit and even though the government may deny her that benefit for any number of reasons, "there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests – especially his interest in freedom of speech." *Id.* at 597. The Fifth Circuit has found the same in numerous cases. *Montgomery v. Boshears*, 698 F.2d 739, 742-43 (5th Cir. 1983); *Lindsey v. Bd. of Regents*, 607 F.2d 672 (5th Cir. 1979); *Goss v. San Jacinto Junior Coll.*, 588 F.2d 96 (5th Cir. 1979); and *Mooney v. Lafayette County School Dist.*, 538 Fed. Appx. 447, 8 (5th Cir. 2013) ("[T]he non-renewal of [the plaintiff's] contract constituted a termination of employment, an adverse employment action.") (**Exh. M.**). *See also Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000) ("Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands.")

Accordingly, this Review Resolution Panel should find that the "non-renewal" of a faculty member's contract is an adverse employment action for purposes of the United States' Constitution First Amendment and the Texas Constitution.

**B. Collin College Violated the United States and Texas Constitutions and Its Own Policies by Non-Renewing Dr. Jones' Contract on the Basis of Her Association with TFA.**

The United States Constitution's First Amendment provides:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

Although not explicit in its language, the Supreme Court has found that, "It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech." *NAACP v. Alabama ex. rel. Patterson*, 357 U.S. 449, 460 (1958).

The Fifth Circuit has found that the right of association includes "the right of public employees to join unions and the right of their unions to engage in advocacy and to petition government in their behalf." *Mote v. Walthall*, 902 F.3d 500, 507 (5th Cir. 2018) (quoting *Hitt v. Connell*, 301 F.3d 240, 249 (5th Cir. 2002)). State action taken "to intimidate public employees from joining a union or from taking an active part in their affairs" or to retaliate against them violates the First Amendment. *Id.* This analysis does not change simply because the union is not engaged in collective bargaining. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002); *See also Madison Joint*

*Sch. Dist. v. Wisconsin Employment relations Comm'n*, 429 U.S. 167, 174-75 (1976) (Board cannot prohibit a non-union member teacher to advocate for collective bargaining negotiations).

Likewise, the Texas Bill of Rights, Texas Constitution, Article 1, section 27 provides:

**The citizens shall have the right, in a peaceable manner, to assemble together for their common good**; and apply to those invested with the powers of government for redress of grievances or other purposes, by petition, address or remonstrance.

In fact, the Texas Supreme Court has found: "Irrespective of whether the guarantee is in fact broader, it is quite obvious that the Texas Constitution's affirmative grant of free speech is more broadly worded than the first amendment's proscription of Congress from abridging freedom of speech. It is equally obvious that the framers of the first Texas Constitution were quite aware of the difference." *O'Quinn v. State Bar of Tex.*, 763 S.W.2d 397, 402 (Tex. 1988). Accordingly, the Texas Constitution arguably affords even *stronger* protections than the First Amendment does for free speech and assembly.

Many of Collin College's own internal policies recognize these rights as well. DGC(LEGAL) recognizes that the First Amendment applies to college districts and prohibits such entities from abridging the right of the people to peaceably assemble. **Exh. N.** DGBA(LEGAL) notes that the U.S. Constitution protects the "freedom of speech". **Exh. O.** Moreover, this policy recognizes that the Texas Constitution protects the right of citizens, including college district employees, "to assemble together for their common good...."

Here, Collin College has explicitly stated that it decided to non-renew Dr. Jones' contract because they had to ask her to remove the listing from the TFA website and a similar incident occurring in 2017. This reason was clearly given as a signal to her and other affiliates of TFA to know that such relationships with TFA was highly disapproved of by Collin College. Moreover, the action was clearly taken to further the chilling effect of intimidating others to not join or openly show their membership.

Collin College will likely argue that it was not punishing Dr. Jones for her membership with TFA, but rather was troubled by the TFA website's listing allegedly making it appear as if Collin College was affiliated with TFA. However, a multitude of other faculty members have openly indicated on professional association websites that they are professors at Collin College and have even included links to their own Collin College emails. **Exhs. P1-P4.** None of them were ever disciplined or denied employment by Collin College for the same reason. Accordingly, it is clear that Collin College was troubled by Dr. Jones' involvement with TFA rather than the concern that they would be mistaken as an affiliate of TFA.

In fact, Collin College's singling out of TFA only makes more it "all the more blatant" that it has in fact violated Dr. Jones' First Amendment rights under the United States and Texas Constitutions. As the Southern District Court of Texas has noted:

Discrimination against speech because of its message is presumed to be unconstitutional.... **When the government targets not subject matter, but**

> **particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant.** Viewpoint discrimination is thus an egregious form of content discrimination. The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.

*Monroe v. Hous. Indep. Sch. Dist.*, 419 F. Supp. 3d 1000, 1007 (S.D. Tex. 2019) (citing *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819 (1995)) (emphasis added).

Here, Collin College has been explicit in stating that it was motivated by Dr. Jones' association with TFA in nonrenewing her contract and it engaged in viewpoint discrimination by treating her affiliation with TFA differently than that of her colleagues' professional affiliations. Accordingly, the Review Resolution Panel should find that Collin College retaliated against Dr. Jones based on her exercise of legally protected rights and in violation of Collin College policies.

### C. Collin College Violated the United States and Texas Constitutions and Its Own Policies by Non-Renewing Dr. Jones' Contract on the Basis of Her Speech Relating to COVID-19.

The issue here is whether Dr. Jones' communications relating to COVID-19, in her role as a member of the CFC and outside of it, are protected speech under the First Amendment of the United States Constitution and Texas Constitution, Article 1, section 8. As noted *infra*, the Texas Constitution likely affords even greater protections for freedom of speech than the United States Constitution does. *O'Quinn*, 763 S.W.2d at 402. Thus, a violation of the First Amendment is also a violation of the Texas Constitution.

For a successful claim under the First Amendment, a public employee must show: (1) the relevant speech must involve a matter of public concern, (2) her interest in commenting on the matter must outweigh her employer's interest in promoting efficiency, and (3) her protected speech must have motivated her public employer's decision to fire her. *Warnock v. Pecos Cnty, Texas*, 116 F.3d 776, 780 (5th Cir. 1997) (citing, *inter alia*, *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968)).

Under the first prong of the inquiry, the Supreme Court found that statements of public concern included those that are the subject of public attention, especially as they related to the regular operation of schools. *Pickering*, 391 U.S. at 571-72. This includes communications regarding "to the function of government…'[such as] misuse of public funds, wastefulness, and inefficiency in managing and operating government entities are matters of inherently public concerns…" *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 557 (1980) (plurality opinion); *see, e.g., Givhan v. Western Line Consol. Sch. Dist.*, 439 U.S. 410, 415–416 (1979) (determining that the free speech protections afforded under the First and Fourteenth Amendments to the U.S. Constitution may apply to a public employee even where the public employee exercises her rights privately with her employer rather than before the public).

Here, Dr. Jones was told her contract was non-renewed for engaging in speech that disagreed with Collin College's COVID-19 plans. It is hard to imagine a topic of higher public concern than the international pandemic, COVID-19. Moreover, the topic has also been the focal point of public

interest as it relates to how schools and campuses should operate in light of it. *See* Tex. Health and Human Servs., Tex. Public Schs. COVID-19 Date, accessible at https://dshs.texas.gov/coronavirus/schools/texas-education-agency/; KHOU-11, COVID-19 Cases in Texas Schools: Who has the Most? The Fewest?, accessible at https://www.khou.com/article/news/investigations/covid-19-cases-in-texas-schools/285-e8b80599-701b-44ae-abe6-18e118234f95; Houston Chronicle, COVID Spread Remains Minimal in Texas Schools Despite State Surge, accessible at https://www.houstonchronicle.com/coronavirus/article/COVID-spread-remains-minimal-in-Texas-schools-15777418.php; Texas Tribune, Texas Schools Tell Teachers with Medical Risks They Must Return to Classrooms During the Pandemic, accessible at https://www.texastribune.org/2020/10/20/texas-schools-teachers-coronavirus-pandemic/; KLTV, CDC Recommendations Keeping COVID-19 Infections Low at East Texas Schools, accessible at https://www.kltv.com/2021/01/29/cdc-recommendations-keeping-covid-infections-low-east-texas-schools/.

Additionally, courts have been highly deferential to teachers on speaking to matters of public operation. The Supreme Court has noted that teachers, as a class, are "most likely to have informed and definite opinions" as to these types of matters. 391 U.S. at 572. In *Wieman v. Updegraff*, the Supreme Court has noted that,

> It is the special task of teachers to foster those habits of open-mindedness and critical inquiry which alone make for responsible citizens, who, in turn, make possible an enlightened and effective public opinion. Teachers must fulfill their function by precept and practice, by the very atmosphere which they generate; they must be exemplars of open-mindedness and free inquiry.

344 U.S. 183, 196 (1952). Accordingly, Dr. Jones' speech satisfies the first prong of the *Warnock* analysis.

Under the second prong, Dr. Jones must show that her interest in commenting on the matter outweighs Collin College's interest in promoting efficiency. Collin College has not alleged that Dr. Jones' speech resulted in a hindrance of their operations or that her speech impeded her from carrying out her job. In fact, Dr. Jones has received exceptional reviews and was on approved for renewal until Dr. Matkin and Dr. Jenkins decided to non-renew on the grounds of her speech.

Collin College will likely argue their operations were hindered because they did not have the full support of the faculty. However, a hindrance under this analysis requires more than just showing that the public employee engaged in negative speech. In *Pickering*, the Supreme Court found that the First Amendment protected a teacher who made erroneous statements in criticism of the school board. 391 U.S. at 572-73. Likewise, in *Givhan*, the Court found that the First Amendment protected a teacher who made critical statements in private to her principal as to how the school was abiding by a government order to desegregate. *Givhan v. Western Line Consol.*, 439 U.S. 410, 414-15 (1979). Moreover, if a government entity could always argue that critical speech hindered their operations simply because the speech was critical, then no public or private individual could ever

Review Resolution Panel
February 9, 2021
Page **9** of **9**

engage in critical speech again. Accordingly, the Resolution Review Panel should find that Dr. Jones' speech satisfies the second prong.

Lastly, Dr. Jones needs to show that her protected speech motivated Collin College's decision to fire her. It is clear here that this is exactly what happened as Collin College has stated outright that they were nonrenewing her because she promoted speech criticizing their plans to reopen. Accordingly, the Resolution Review Panel should find that Collin College violated the First Amendment, the Texas Constitution, and its own policies by non-renewing Dr. Jones on the basis of her speech.

### D. Collin College's Violations of Its Own Policies are Illegal Under Federal Precedent.

In *Service v. Dulles*, the Supreme Court noted that regulations issued by a government entity are binding upon that government entity, as well as the citizen. 354 U.S. 363, 372 (1957); *United States ex rel. Accardi v. Shaugnessy*, 346 U.S. 260, 265-66 (1954) (same). Here, Collin College has issued multiple policies protecting faculty's freedom of speech and associations. Having done so, Collin College has bound itself to abide by those policies and its failure to do so, as described above, is a violation of *Service v. Dulles*. Accordingly, the Resolution Review Panel should find that Collin College's conduct is illegal per *Service v. Dulles*.

### III. CONCLUSION

For the reasons above, Dr. Jones respectfully requests that the Resolution Review Panel grant her grievance and reinstate her to the three-year contract she had been approved for by her associate dean, dean, and provost. In the event that, somehow, the Resolution Review Panel denies her grievance, she reservices the right to present her grievance to the Collin College Board of Trustees. *Prof'l Ass'n of College Educators v. El Paso County Cmty Dist.*, 678 S.W.2d 94 (Tex. App.—El Paso 1984, writ ref'd n.r.e.) (the board must stop, look, and listen and must consider the petition, address, or remonstrance).

Lubin & Enoch, P.C.

/s/ Clara S. Acosta, Esq.
clara@lubinandenoch.com

CA/sll

cc:   Dr. Suzanne Jones (Via Email Only)
      Amanda Moore, Esq. (Via email at amandam@tsta.org)
      Monica Velazquez, Esq. (Via email at: mvelazquez@collin.edu)