IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| SUZANNE JONES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 4:21-CV-00733-ALM |
| | § | |
| H. NEIL MATKIN, in his personal and | § | |
| official capacity; TONI JENKINS, in her | § | |
| personal and official capacity; and | § | |
| COLLIN COLLEGE | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON QUALIFIED IMMUNITY

Pursuant to Fed. R. Civ. P. 56 and Local Rule CV-56, Defendants H. Neil Matkin and Toni Jenkins in their individual capacities (the "Moving Defendants") file the following motion for summary judgment on qualified immunity.

## I.
## INTRODUCTION

1.1     Plaintiff is Suzanne Jones, a former professor at Collin College. Dkt. 1, ¶¶ 2, 10. Based on the allegations in her Complaint, Jones complains that her faculty contract with Collin College was non-renewed in retaliation for engaging in constitutionally protected conduct and speech. See Dkt. 1, ¶¶ 10-116. The Complaint asserts four causes of action against Collin College and against Defendants Matkin and Jenkins in their official and individual capacities: (1) violation of the right to free expression and association under the First and Fourteenth Amendments to the U.S. Constitution; (2) violation of the right to free expression and association under the Texas Constitution;[1] (3) violation of the right to due process under the Fourteenth Amendment of the

---

[1] As recognized by the Texas Supreme Court, "[t]he text, history, and purposes of Article I, Section 8 [of the Texas Constitution] have been thoroughly examined by this Court. We know of nothing to suggest that [conduct] restricting

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON QUALIFIED IMMUNITY                                    PAGE 1
3612266

U.S. Constitution; and (4) violation of the right to due course under the Texas Constitution.[2] Dkt. 1, ¶¶ 117-129.

1.2     The Moving Defendants, in their individual capacities, have asserted qualified immunity as an affirmative defense to Plaintiff's claims. Dkt. 5, p. 16, ¶ 6.

1.3     As will be shown below, the Moving Defendants ask for, and are entitled to, a summary judgment in their favor on their qualified immunity defense.

## II.
## STATEMENT OF ISSUES TO BE DECIDED

2.1     Whether Plaintiff can meet her burden of showing that the defense of qualified immunity does not apply to her claims against Defendant Matkin in his individual capacity. Plaintiff, as a matter of law, cannot meet this burden.

2.2     Whether Plaintiff can meet her burden of showing that the defense of qualified immunity does not apply to her claims against Defendant Jenkins in her individual capacity. Plaintiff, as a matter of law, cannot meet this burden.

## III.
## STATEMENT OF UNDISPUTED MATERIAL FACTS

3.1     In April 2018 Plaintiff signed a Full-Time Faculty Contract (the "Contract") with Collin College that expired in May 2021. Dkt. 1, ¶ 14 and Exhibit A [Dkt. 1-1]. The Contract's terms include the following:

---

speech should be judged by a different standard under the state constitution than the First Amendment." *Operation Rescue-National v. Planned Parenthood*, 975 S.W.2d 546, 559 (Tex. 1998); see also *Arnold v. City of Balch Springs*, 2005 U.S. Dist. Lexis 1080, *7 (N.D. Tex. 2005) ("There is little case law addressing the free speech retaliation cause of action under the Texas Constitution. The Fifth Circuit and at least one state court have indicated that these claims are governed by federal First Amendment precedents.") (citing cases).

[2] The due course of law/due process provisions of Texas Constitution, Art. I, § 19, and the Fourteenth Amendment of the U.S. Constitution are "without meaningful distinction" and thus Texas courts "have traditionally followed contemporary federal due process interpretations of procedural due process issues." *Mosely v. Tex. HHS Comm'n*, 593 S.W.3d 250, 264 (Tex. 2019); *Univ. of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995).

> 1. The College agrees to employ [Plaintiff Jones] … beginning on the 15th day of August 2018 and ending on the last scheduled day or otherwise, as directed by the College, in May 2021 (the "Term").
>
> 5. …The Contract is subject to Collin College's Board Policies, Collin College's Core Values, rules, procedures, regulations, and all applicable state and federal laws and regulations. Therefore, [Plaintiff Jones] agrees to comply with Collin College's Board policies, Colling College Core Values, rules, procedures, regulations, all applicable federal and state law and any administrative directives…
>
> 6. The College has not adopted any policy, rule, regulation, law or practice providing for tenure at the College. This Contract does not grant or create any contracted obligation of continued employment, a property interest, claim or other guaranteed entitlement beyond the last day of the Term of this Contract.
>
> 12. Renewal of the Contract, if any, is not guaranteed and is subject to applicable College Board Policy DMAB (Local) or any other College policy as it may exist or may be amended during the Term of this Contract.

Dkt. 1-1, Page ID #27-28 (also attached hereto as Exhibit 1).

3.2  Plaintiff's expiring Contract was considered for renewal beginning in the fall 2021 academic year. However, as part of the renewal process, Collin College's Senior Vice President of Campus Operations, Defendant Dr. Toni Jenkins, did not recommended the award of a new faculty contract or renewal of Plaintiff's Contract.[3] As alleged by Plaintiff, in making her recommendation of non-renewal, Dr. Jenkins considered the following criteria, which is outlined in Board Policy DH (Exhibit):

- Whether the faculty member [Jones] advances the vision and mission the college.

- Whether the faculty member [Jones] follows established policies, procedures and channels of communication.

---
[3] Plaintiff was *not* terminated by either of the Moving Defendants. Rather, her term contract expired by operation of law and her contract was simply not renewed.

- Whether the faculty member [Jones] serves effectively on committees, task forces, or other planning structures, which is part of [the faculty's] shared governance responsibilities.

- Whether the faculty member [Jones] adheres to [the college's] core values.

- Whether the faculty member [Jones] collaborates well or professionally with other faculty and staff, and others.

Dkt. 1-7, Page ID #98 (also attached hereto as Exhibit 2).

3.3 Using the above criteria, Dr. Jenkins as currently alleged recommended to non-renew

Plaintiff's Contract based on the following considerations:

- In 2017, Professor Jones was counseled by her dean at that time regarding her use of the college's name when linked to expressions of her personal opinions. In fall 2020, Dean Evans had to counsel Professor Jones about the improper use of the college's name.[4]

- As an employee, the college expected Professor Jones to work collaboratively through shared governance to achieve the vision and mission of the college. This past year posed many challenges, but once the Board of Trustees approved the reopening of the college, there was an expectation that such collaboration would continue. This did not occur. Professor Jones took indirect means to exert external pressure on the college to not reopen as planned and to challenge operational decisions. This conduct directly undermined decisions made by the Board of Trustees for the college.

- Professor Jones did not express her concerns through normal channels of communication through direct conversations with her associate dean, dean, campus provost, or other administrators. Working outside of available communication lines or committee structures is not productive and it is not something that is expected from faculty members.

Dkt. 1-7, Page ID # 98-99 (also attached hereto as Exhibit 2).

---

[4] According to Collin College Board Policy DGC (Local), attached hereto as Exhibit 4 and also available on-line at https://pol.tasb.org/Policy/Code/304/filter=DGC: "When faculty and support staff speak or write as private citizens, however, they must bear in mind that their actions will inevitably be judged by the public and reflect upon their profession and institution. Therefore, faculty and support staff will strive for accuracy, exercise appropriate restraint, exhibit tolerance for differing opinions, and indicate clearly that they are not an official spokesperson for the College District."; "Faculty members will recognize that the public will judge their institution and their profession by their public conduct. Therefore, faculty members will always make clear that the views they express are their own and will avoid creating the impression that they speak or act on behalf of the College District or of their profession."; "Faculty members will recognize their responsibility to adhere to the policies and procedures of the institution. Therefore, faculty members who have differences of opinion with existing or proposed policies or procedures will express these views through the standing committee structure of the College District or their supervising administrators."

3.4     Dr. Jenkins was clear that her recommendation for non-renewal was not based on Plaintiff's membership in the Texas Faculty Association (TFA) – "Professor Jones is welcome to join any external organization she chooses to join, as is any employee of the college." Rather, Dr. Jenkins recommended non-renewal because (despite prior warnings) Plaintiff knowingly allowed Collin College's name to be misused by the TFA on its website and on the internet. Dkt. 1-7, Page ID # 99-100 (also attached hereto as Exhibit 2).

3.5     Further, with respect to Plaintiff's failure to work collaboratively through shared governance, Dr. Jenkins recommended non-renewal because, *inter alia*:

> Professor Jones is a member of Faculty Council and is involved in shared governance sanctioned by the college. Successful participation in shared governance at the college comes with the responsibility of accepting and supporting the decisions and strategic goals as determined by the Board of Trustees….
>
> Shared governance allows for diverse opinions to be considered. Everyone will not get what they want, but their positions can be voiced and considered. However, once strategic or operational decisions are made, it is my expectation that as an employee, Professor Jones, would have supported those decisions and worked collaboratively to achieve agreed upon outcomes. That did not occur. Professor Jones did not work collaboratively and took measures outside the shared governance structures and normal communication channels to attempt to exert external pressure on the college not to reopen as planned or to challenge operational issues, which directly undermines decisions made by the Board for the college. … Professor Jones did not discuss this issue with her dean, or campus provost or go through available communication channels and such actions are not consistent with the college's expectations for professional conduct from its faculty…
>
> Professor Jones continued to engage in conduct that is misrepresentative, outside the shared governance model, outside of normal channels of communication and aimed at overriding the Board's decisions and the college's operational efforts designed to meet its vision and mission.

Dkt. 1-7, Page ID # 101-102 (also attached hereto as Exhibit 2).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON QUALIFIED IMMUNITY            PAGE 5
3612266

3.6     Collin College's District President, Defendant Dr. Neil Matkin, agreed with Dr. Jenkins' recommendation of non-renewal: "I received a recommendation by our Senior Vice President of Campus Operations, Dr. Toni Jenkins, to not renew a faculty contract for Professor Jones. … Professor Jones had not addressed the misuse of the college's name by TFA… especially given her previous warnings… Additionally, in spite of the fact that Professor Jones had served as a member of Faculty Council, Professor Jones had not worked collaboratively through shared governance at the college … I agreed that Professor Jones' faculty contract should not be renewed because she chose to operate outside the College's shared governance, lines of communication and resources." Dkt. 1-8, Page ID #132 (also attached hereto as Exhibit 3).

3.7     Plaintiff, using Collin College's grievance process under Board policy, then appealed the non-renewal decision to Collin College Review Resolution Panel, which heard and eventually denied her grievance. Plaintiff then appealed the Review Resolution Panel's ("RRP") decision to the college's Executive Vice President, who affirmed the RRP's decision. After her administrative appeal was denied by the Executive Vice President, "[o]n May 31, 2021, Jones' three-year teaching contract ended." Dkt. 1, ¶¶ 43-56, 59-60, 64. In other words, Plaintiff Jones was provided both of the requirements of due process: (1) notice of non-renewal, and (2) the opportunity to grieve of "some kind of hearing" before her Contract ended.

**IV.
ARGUMENT**

**A.    Qualified Immunity Alters the Usual Summary Judgment Standard**

4.1     Summary judgment is proper when there is no genuine dispute of material fact. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Normally, a defendant who seeks summary judgment on a plaintiff's claim must demonstrate the absence of a genuine dispute of material fact by either (1) submitting summary judgment evidence that negates the existence of a

material element of the plaintiff's claim, or (2) showing there is no evidence to support an essential element of the plaintiff's claim. *Celotex*, 477 U.S. at 323-25; *Lavespere v. Niagra Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir. 1990).

4.2 However, "[a] qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan,* 623 F.3d 249, 253 (5th Cir. 2010). More particularly, "[q]ualified immunity changes the nature of the summary-judgment burden, how and when the burden shifts, and what it takes to satisfy the burden." *Joseph v. Bartlett,* 981 F.3d 319, 329 (5th Cir. 2020). This burden change is as follows:

> When a public official makes "a good-faith assertion of qualified immunity," that "alters the usual summary-judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." In other words, to shift the burden to the plaintiff, the public official need not show (as other summary-judgment movants must) an absence of genuine disputes of material fact and entitlement to judgment as a matter of law.
>
> Once the burden is on the plaintiff, things briefly sound familiar again: The plaintiff must show that there is a genuine dispute of material fact and that a jury could return a verdict entitling the plaintiff to relief for a constitutional injury. That would be the same if the plaintiff did not face qualified immunity. But, to overcome qualified immunity, the plaintiff's version of those disputed facts must also constitute a violation of clearly established law. This requires the plaintiff to "identify a case" – usually a "body of relevant case law" – in which "an officer acting under similar circumstances…was held to have violated the [Constitution].[5] While there need not be "a case directly on point," the unlawfulness of the challenged conduct must be "beyond debate."

*Joseph,* 981 F.3d at 330. Here, as more fully detailed below, Plaintiff cannot meet her summary judgment burden to show that qualified immunity is not available to the Moving Defendants – i.e.,

---

[5] Only published opinions can clearly establish the law for purposes of qualified immunity. *Cooper v. Brown,* 844 F.3d 517, 525 n. 8 (5th Cir. 2016); *McCoy v. Alamu,* 950 F.3d 226, 233 n. 6 (5th Cir. 2020), vacated on other grounds, 141 S.Ct. 1364 (2021).

that the alleged "unlawfulness" of the Moving Defendants' conduct at issue is "beyond debate" under clearly established law.

**B. Defendants are Entitled to Qualified Immunity as a Matter of Law**

**1. Qualified immunity protects public officials from suit**

4.3 Qualified immunity protects officials from suit and liability unless their conduct violates a clearly established constitutional right. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity "'gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Messerschmidt v. Millender,* 565 U.S. 535, 547 (2012). When a defendant asserts qualified immunity, the burden then shifts to the plaintiff to rebut this defense. *Saldana v. Garza,* 684 F.2d 1159, 1163 (5th Cir. 1982).

4.4 Qualified immunity involves a two-prong analysis: (1) whether a statutory or constitutional right was violated on the facts alleged, and (2) whether the defendant's actions violated clearly established statutory or constitutional rights which a reasonable person would have known. *Griggs v. Brewer,* 841 F.3d 308, 312 (5th Cir. 2004). Regarding this second prong, "[i]f the defendant's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is still appropriate because the defendant's actions were 'objectively reasonable'[6] in light of 'law which was clearly established at the time of the disputed action.'" *Brown,* 623 F.3d at 253. Courts "ha[ve] discretion to perform either prong first." *Vincent v. City of Sulphur,* 805 F.2d 543, 547 (5th Cir. 2015).

4.5 The Fifth Circuit has frequently described the correct method for analyzing the second prong of qualified immunity, stating that a court must not deny the protection of qualified

---

[6] "Whether an official's conduct was objectively reasonable is a question of law for the court, not a matter of fact for the jury." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

immunity unless existing precedent places the constitutional question ***"beyond debate."*** *Vincent*, 805 F.3d at 547 (citing *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc)). "The court must 'ask whether the law so clearly and unambiguously prohibited [the official's] conduct that *every* reasonable official would understand that what he is doing violates [the law]." *Id.*

4.6  In *Vincent*, the Fifth Circuit went on to state:

> Although a case *directly* on point is not necessary, there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful. [omitting cite] Abstract or general statements of legal principle untethered to analogous or near-analogous facts are not sufficient to establish a right 'clearly' in a given context, rather, the inquiry must focus on whether a right is clearly established as to the specific facts of the case. See *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004). Therefore, we must decide whether the cases cited by the district court placed beyond reasonable debate the proposition that…

*Vincent*, 805 F.3d at 547.

4.7  The Supreme Court is in accord. See *White v. Pauly*, ___ U.S. ___, 137 S.Ct. 548 (2017). In *White*, the Supreme Court reversed the Tenth Circuit because the lower court had not analyzed clearly established law in the context of the particularized facts of that case when the lower court denied an officer's immunity defense: "The panel majority misunderstood the 'clearly established' analysis: It failed to identify a case where an officer acting under similar circumstances as Officer White was held to have violated the Fourth Amendment." *White*, 137 S.Ct. at 551-52. *White* makes it clear that the approach the Fifth Circuit stated in *Vincent* is indeed correct and should continue to guide district courts in their qualified immunity evaluations. Importantly, in *White*, the Supreme Court reiterated that the clearly established laws "should not be defined at a high level of generality," but instead must be "particularized" to the facts of the case. Otherwise plaintiffs "would be able to convert the rule of qualified immunity . . . into a rule of virtual unqualified

liability by simply alleging violation of extremely abstract rights." *White,* 137 S.Ct. at 552. The Fifth Circuit has recently demonstrated its clear commitment to this "particularized" requirement of "clearly established." See, e.g., *Cope v. Cogdill,* 3 F.4th 198, 204 and n. 4 (5th Cir. 2021) ("We are bound by the restrictive analysis of 'clearly established' set forth in numerous Supreme Court precedents. … Therefore, unless existing precedent 'squarely governs' the conduct at issue, an official will be entitled to qualified immunity."; "[W]e must enforce the heightened requirements that the Supreme Court has set forth in its recent qualified immunity decisions.") (citing *White v. Pauly,* 137 S.Ct. 548 (2017); *Mullenix v. Luna,* 577 U.S. 7 (2015); *Brosseau v. Haugen,* 543 U.S. 194 (2004)); *Morrow v. Meachum,* 917 F.3d 870, 874-75 (5th Cir. 2019) ("First, we must frame the constitutional question with specificity and granularity. For example, it is obviously beyond debate the Fourth Amendment prohibits certain 'unreasonable…seizures.' 'Yet that is not enough.'") (quoting *Saucier v. Katz,* 533 U.S. 194, 202 (2001)). See also *Joseph*, 981 F.3d at 345 (concluding the defendants were entitled to qualified immunity because the plaintiffs failed to identify an analogous case).[7]

4.8 To summarize, "[q]ualified immunity shields from liability all but the plainly incompetent or those who knowingly violate the law. Accordingly, ***qualified immunity represents the norm, and courts should deny a defendant immunity only in rare circumstances***." *Hinson v. Martin*, 853 Fed. Appx. 926, 930 (5th Cir. 2021) (quoting *Angulo v. Brown*, 978 F.3d 942, 948-49 (5th Cir. 2020)) (emphasis added). This case does not involve one of those rare circumstances.

---

[7] As an example of a proper qualified immunity inquiry see, e.g., *Barra v. Boudreaux*, 2020 U.S. Dist. Lexis 62322, *24 (W.D. La. 2020): "This means that the inquiry here is not whether the general requirement of probable cause for a warrantless arrest is 'clearly established.' Rather, the inquiry is whether it was clearly established that the Fourth Amendment prohibited Merithew's conduct 'in the situation he confronted' based on controlling or persuasive authority from other cases." See also *White*, 137 S.Ct. at 551-52: "The panel majority misunderstood the 'clearly established' analysis: It failed to identify a case where an officer acting under similar circumstances as Officer White was held to have violated the Fourth Amendment."

### 2. The law relating to Plaintiff's causes of action

4.9 With respect to Plaintiff's due process/due course causes of action, "[a] claim that an employer violated procedural due process during an adverse employment action requires that (1) the plaintiff have a protected property interest in her employment, and (2) the termination of the interest was effected without the requisite procedural protections." *McCall v. Dallas Indep. Sch. Dist.*, 2001 U.S. Dist. Lexis 23238, * 17 (N.D. Tex. 2001) (citing *McDonald v. City of Corinth, Tex.*, 102 F.3d 152, 155 (5th Cir. 1996); *Browning v. City of Odessa, Tex.*, 990 F.2d 842, 844 (5th Cir. 1993)). In other words, "[a] plaintiff sets forth a violation of procedural due process by alleging facts that show that: (1) he had a protected property or liberty interest in his employment; and (2) he was denied 'some kind of hearing' before that interest was terminated." *Fernandez v. San Antonio Hous. Auth.*, 2005 U.S. Dist. Lexis 32043, * 12-13 (W.D. Tex. 2005) (citing *Rathjen v. Litchfield*, 878 F.2d 836, 838 (5th Cir. 1989)). Importantly, since Collin College does not have tenure, an employee on a term contract such as Plaintiff Jones does not have a protected property interest in the renewal of her expiring contract under applicable legal precedent. See *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 578 (1972); *Grimm v. Cates*, 532 F.2d 1034, 1036 (5th Cir. 1976); *Boles v. Navarro College*, 2020 U.S. Dist. Lexis 198115, * 9-10 (N.D. Tex. 2020). See also, *Burris v. Willis Indep. Sch. Dist.*, 713 F.2d 1087, 1091 (5th Cir. 1983) ("We hold that Burris did not have a property right in the renewal of his contract. Lacking such a right, Burris was not entitled to a due process hearing."). In *Boles,* when faced with nearly identical claims brought by a faculty member at a community college, the court indicated that an expectation of a property interest was clearly insufficient noting that "as the band Boston once sang, it takes 'More than a Feeling' … Boles' contract expressly forecloses any property interest in future employment beyond the contract term." 2020 U.S. Dist. Lexis 198115 at * 8. Relevant to this motion, according

to the Fifth Circuit: "We regularly grant qualified immunity in substantive due process cases where the plaintiff fails to establish a clearly-established property interest." *Wigginton v. Jones*, 964 F.3d 329, 335-36 (5th Cir. 2020) (holding the district court erred when it denied the defendants' motion for qualified immunity because "teachers without tenure" do not have a property interest in continued employment); see also, *Wilkerson v. Univ. of North Texas*, 878 F.3d 147, 154-58 (5th Cir. 2017) (same). Moreover, here, Plaintiff's Complaint admits that, notwithstanding the lack of a property right in the renewal of her contract, she was nevertheless provided "some kind of hearing" with respect to her contract's non-renewal. See Dkt. 1, ¶¶ 43-56, 59-60.

4.10 Next, with respect to the free speech/association causes of action, the constitutional rights at issue – in the context of an internal employment dispute – are not clearly established under these particular facts. That Collin College (and, in turn, the Moving Defendants) was acting in its role as Plaintiff's employer is relevant to the qualified immunity inquiry. See, e.g., *Martinez v. Ctr. for Health Care Servs.*, 2002 U.S. Dist. Lexis 13276, * 31 (N.D. Tex. 2005) (noting that when the government is acting as an employer, rather than as a sovereign, "courts should tolerate more restrictions on speech when government is acting in this role"); *Smock v. Bd. of Regents of the Univ. of Mich.*, 353 F.Supp.3d 651, 659 (E.D. Mich. 2018) (noting that "public universities may restrict their employees' speech in a manner that would be impermissible absent the employment relationship").[8] Relevant here, speech that may be characterized as a "rant" or that is "akin to an internal grievance" is not entitled to constitutional protection because "the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office

---

[8] The Fifth Circuit has noted that, when evaluating an employee's First Amendment rights in the public employment context, the factual scenarios often "locate themselves on a spectrum" and, accordingly, "[w]e reiterate the 'oft repeated warning that because of the wide variety of situations in which this issue might arise, each case should be considered on its particular facts.'" *Grogan v. Lange*, 617 Fed. Appx. 288, 292 (5th Cir. 2015). Yet, with respect to evaluating an official's right to qualified immunity, "unless existing precedent 'squarely governs' the conduct at issue, an official will be entitled to qualified immunity." *Cope*, 3 F.4th at 204 and n. 4.

affairs." *Graziosi v. City of Greenville Miss.*, 775 F.3d 731, 738-39 (5th Cir. 2015) (quoting *Connick v. Myers*, 461 U.S. 138, 149 (1983)). "Typically, an employee speaks in furtherance of his personal employer-employee dispute when he discusses personnel matters directly impacting his job or criticizes other employees or supervisors' job performance." *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 187 (5th Cir. 2005). See also *Moreau v. St. Landry Par. Fire Dist. No. 3*, 808 Fed. Appx. 225, 228-29 (5th Cir. 2020); *Eubank v. Lockhart Indep. Sch. Dist.*, 229 F.Supp.3d 552, 568-70 (W.D. Tex. 2017). Such is the case here where Plaintiff's alleged speech concerned issues related to *her own* workplace.

### 3. Defendant Matkin is entitled to qualified immunity

4.11 Here, the allegations in the Complaint do not overcome Defendant Matkin's qualified immunity defense: the Complaint's allegations and attachments do not show that Matkin's conduct violated Plaintiff's due process or due course rights; nor does the Complaint allege facts sufficient to establish that Matkin's conduct violated "clearly established" free speech and association rights.

4.12 First, regarding Plaintiff's due process/due course rights claims, Plaintiff Jones cannot "identify a case" in which "an officer acting under similar circumstances [as Matkin] was held to violate [the Fourteenth Amendment]." *Joseph*, 981 F.3d at 330. More specifically, Plaintiff Jones cannot identify a case wherein a supervisor who recommended the non-renewal of a teacher's expiring contract was held to violate the Fourteenth Amendment when that teacher did not have tenure (i.e., did not have a property interest in continued employment) and was given "some sort of [grievance] hearing" prior to non-renewal. The alleged unlawfulness of Matkin's recommendation and ultimate approval under Board policy of non-renewal is not "beyond debate," and Matkin is therefore entitled to qualified immunity on these claims at this stage of the proceedings.

4.13     Next, regarding Plaintiff's free speech and association claims, Plaintiff Jones cannot "identify a case" in which "an officer acting under similar circumstances [as Matkin] was held to violate [the First Amendment]." *Joseph*, 981 F.3d at 330. More specifically, Plaintiff Jones cannot identify a case wherein a supervisor who recommended the non-renewal of a teacher's expiring contract was held to violate the First Amendment when that teacher both fails to comply with the college's policy regarding the use of its name and fails to work collaboratively through shared governance using administrative channels of communication with respect to operational issues affecting the teacher's job. The alleged unlawfulness of Matkin's recommendation and ultimate approval of non-renewal is not "beyond debate," and Matkin is therefore entitled to qualified immunity on these claims at this stage of the proceedings.

   **4.  Defendant Jenkins is entitled to qualified immunity**

4.14     Here, the allegations in the Complaint do not overcome Defendant Jenkins' qualified immunity defense: the Complaint's allegations and attachments do not show that Jenkins' conduct violated Plaintiff's due process or due course rights; nor does the Complaint allege facts sufficient to establish that Jenkins' conduct violated "clearly established" free speech and association rights.

4.15     First, regarding Plaintiff's due process/due course rights claims, Plaintiff Jones cannot "identify a case" in which "an officer acting under similar circumstances [as Jenkins] was held to violate [the Fourteenth Amendment]." *Joseph*, 981 F.3d at 330. More specifically, Plaintiff Jones cannot identify a case wherein a supervisor who recommended the non-renewal of a teacher's expiring contract was held to violate the Fourteenth Amendment when that teacher did not have tenure (i.e., did not have a property interest in continued employment) and was given "some sort of [grievance] hearing" prior to non-renewal. The alleged unlawfulness of Jenkins'

recommendation of non-renewal is not "beyond debate," and Jenkins is therefore entitled to qualified immunity on these claims at this stage of the proceedings.

4.16  Next, regarding Plaintiff's free speech and association claims, Plaintiff Jones cannot "identify a case" in which "an officer acting under similar circumstances [as Jenkins] was held to violate [the First Amendment]." *Joseph*, 981 F.3d at 330. More specifically, Plaintiff Jones cannot identify a case wherein a supervisor who recommended the non-renewal of a teacher's expiring contract was held to violate the First Amendment when that teacher both fails to comply with the college's policy regarding the use of its name and fails to work collaboratively through shared governance using administrative channels of communication with respect to operational issues affecting the teacher's job. The alleged unlawfulness of Jenkins' recommendation of non-renewal is not "beyond debate," and Jenkins is therefore entitled to qualified immunity on these claims at this stage of the proceedings.

## V.
## CONCLUSION AND PRAYER

5.1  For these reasons, pursuant to Fed. R. Civ. P. 56, Defendants Matkin and Jenkins, in their individual capacities, ask the Court to dismiss all of Plaintiff's claims asserted against them in Plaintiff's Complaint [Dkt. 1] based on the defense of qualified immunity.

Respectfully submitted,

**ABERNATHY, ROEDER, BOYD & HULLETT, P.C.**

*/s/ Charles J. Crawford*
**Richard M. Abernathy**
State Bar No. 00809500
**Charles J. Crawford**
State Bar No. 05018900

1700 Redbud Blvd., Suite 300
McKinney, Texas 75069
Telephone: (214) 544-4000
Facsimile: (214) 544-4040
rabernathy@abernathy-law.com
ccrawford@abernathy-law.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2022 a true and correct copy of Defendants' Motion for Summary Judgment was served upon Plaintiff's attorney by the Court's ECF system.

*/s/ Charles J. Crawford*
Charles J. Crawford