## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| SUZANNE E. JONES, | |
| *Plaintiff,* | |
| v. | Civil Action No.: 4:21-cv-733-ALM |
| H. NEIL MATKIN, in his personal and official capacity; TONI JENKINS, in her personal and official capacity; and COLLIN COLLEGE, | |
| *Defendants.* | |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON QUALIFIED IMMUNITY

GREG HAROLD GREUBEL*
PA Bar No. 321130; NJ Bar No. 171622015;
CA Bar. No. 343028
JOSHUA T. BLEISCH*
IN Bar No. 35859-53
JEFFREY D. ZEMAN*
PA Bar No. 382570; MI Bar No. P76610
FOUNDATION FOR INDIVIDUAL RIGHTS
    IN EDUCATION
510 Walnut Street; Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473
greg.greubel@thefire.org
josh.bleisch@thefire.org
jeff.zeman@thefire.org

*Admitted *Pro Hac Vice*

ROBERT W. SCHMIDT
TX Bar No. 17775429
CREWS LAW FIRM, P.C.
701 Brazos Street; Suite 900
Austin, TX 78701
Tel: (512) 346-7077, Ext. 103
schmidt@crewsfirm.com

*Counsel for Plaintiff Suzanne Jones*

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ iv

INTRODUCTION ............................................................................................................. 1

PLAINTIFF'S COUNTER STATEMENT OF ISSUES TO BE DECIDED ............................... 2

RESPONSE TO DEFENDANTS' STATEMENT OF ISSUES TO BE DECIDED .................... 2

RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED
MATERIAL FACTS ........................................................................................................ 2

    I.    Jones Was an Exemplary Professor for Twenty Years at Collin
        College. ........................................................................................................ 2

    II.    Jones Attempts to Raise Her Concerns About the College's
        COVID-19 Reopening Plan. ........................................................................ 3

    III.    Jones Engages in Expressive Association by Starting a Local
        Chapter of a Union and Criticizes the College's Reopening Plans
        Publicly. ...................................................................................................... 5

    IV.    Matkin and Jenkins Terminate Jones, in Part, Because of Her
        Affiliation With a Union. ............................................................................ 7

PROCEDURAL HISTORY ................................................................................................ 9

LEGAL ARGUMENT ...................................................................................................... 11

    I.    Defendants' Motion for Summary Judgment Must Be Denied
        Because Jones Disputes the Basis for her Termination. ........................... 10

        A.    Standard for summary judgment. .............................................. 11

        B.    Jones's association with the union was a motivating factor
            in the decision of Matkin and Jones to terminate her—a
            material fact that precludes summary judgment. ....................... 12

        C.    Deciding the qualified immunity issue before discovery is
            premature, and Jones must be permitted discovery to
            develop a full factual record of Jenkins's and Matkin's
            unconstitutional motivation for terminating her. ...................... 14

II.     Defendants Are Not Entitled to Qualified Immunity for their
        Decision to Overturn Renewal of Jones's Contract Due to Her
        Association with the Union and Speech on Matters of Public
        Concern ................................................................................................ 16

        A.      Qualified immunity is inappropriate where the law gives
                officials 'fair warning' of constitutional rights. ........................................ 17

        B.      Defendants violated clearly established law by
                nonrenewing Jones's contract due to her association with a
                union. ........................................................................................ 18

        C.      Defendants violated clearly established law by
                nonrenewing Jones's contract due to speech on matters of
                public concern. ........................................................................................ 20

CONCLUSION ........................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Anderson v. Creighton*,
  483 U.S. 635 (1987) ................................................................................. 18, 20

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011) ........................................................................................ 17

*Backe v. LeBlanc*,
  691 F.3d 645 (5th Cir. 2012) ......................................................................... 16

*Boddie v. City of Columbus, Miss.*,
  989 F.2d 745 (5th Cir. 1993) .................................................................... 19, 22

*Branton v. City of Dallas, Tex.*,
  272 F.3d 730 (5th Cir. 2001) .................................................................... 21, 22

*Buchanan v. Alexander*,
  919 F.3d 847 (5th Cir. 2019) ......................................................................... 21

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................................................. 11, 15

*Frazier v. King*,
  873 F.2d 820 (5th Cir. 1989) ......................................................................... 22

*Goss v. San Jacinto Junior Coll.*,
  588 F.2d 96 (5th Cir. 1979) ........................................................................... 19

*Harris v. Ross Stores, Inc.*,
  No. 4:17-CV-00237, 2018 WL 1625647 (E.D. Tex. Apr. 4, 2018) ................ 15

*Harris v. Victoria Indep. Sch. Dist.*,
  168 F.3d 216 (5th Cir. 1999) ......................................................................... 20

*Haverda v. Hays Cnty.*,
  723 F.3d 586 (5th Cir. 2013) ......................................................................... 20

*Hitt v. Connell*,
  301 F.3d 240 (5th Cir. 2002) ......................................................................... 19

*Hope v. Pelzer*,
  536 U.S. 730 (2002) ....................................................................................... 18

*Little v. Liquid Air Corp.*,
  37 F.3d 1069 (5th Cir. 1994) ............................................................. 11, 12

*Joseph v. Bartlett*,
  981 F.3d 319 (5th Cir. 2020) ............................................................... 12

*Keyishian v. Bd. of Regents*,
  385 U.S. 589 (1967) ............................................................................. 21

*Lion Boulos v. Wilson*,
  834 F.2d 504 (5th Cir. 1987) ............................................................... 16

*Modica v. Taylor*,
  465 F.3d 174 (5th Cir. 2006) ............................................................... 23

*Morgan v. Swanson*,
  659 F.3d 359 (5th Cir. 2011) ............................................................... 18

*Mullen v. Tiverton Sch. Dist.*,
  504 F. Supp. 3d 21 (D.R.I. 2020) ......................................................... 22

*Myers v. Hasara*,
  226 F.3d 821 (7th Cir. 2000) ............................................................... 22

*Montgomery v. Boshears*,
  698 F.2d 739 (5th Cir. 1983) ............................................................... 19

*Operation Rescue-Nat'l v. Planned Parenthood*,
  975 S.W.2d 546 (Tex. 1998) ................................................................ 18

*Perry v. Sindermann*,
  408 U.S. 593 (1972) ......................................................................... 19, 21

*Pickering v. Bd. of Educ.*,
  391 U.S. 563 (1968) ............................................................................. 21

*Pro. Ass'n of Coll. Educators, TSTA/NEA v. El Paso Cnty. Cmty. Coll. Dist.*,
  730 F.2d 258 (5th Cir. 1984) ........................................................... 18, 19

*Quorum Health Res., L.L.C. v. Maverick Cnty. Hosp. Dist.*,
  308 F.3d 451 (5th Cir. 2002) ............................................................... 11

*Ramirez v. Okla. Dep't of Mental Health*,
  41 F.3d 584 (10th Cir. 1994) .............................................................. 22

*Swanson v. City of Plano, Tex.*,
  No. 4:19-CV-412, 2020 WL 6799173 (E.D. Tex. Nov. 19, 2020) .................. 11, 12

*Tompkins v. Vickers*,
   26 F.3d 603 (5th Cir. 1994) ................................................................ 13

*Villarreal v. City of Laredo*, *Tex.*,
   17 F.4th 532 (5th Cir. 2021) .................................................. 17, 18, 22

*Woolslayer v. Driscoll*,
   CV 20-573, 2020 WL 5983078 (W.D. Pa. Oct. 8, 2020) ................................. 22, 23

**Statutes and Constitutional Provisions:**

Fed. R. Civ. P. 26(a)(1) ............................................................................ 10

Fed. R. Civ. P. 56 ............................................................................... 1, 16

Fed. R. Civ. P. 12(b)(6) ......................................................................... 9, 16

Local Rule CV-7 .................................................................................. 1

Local Rule CV-56 ................................................................................. 1

Tex. Const. art I., § 8 .......................................................................... 18

Tex. Const. art. I, § 19 .......................................................................... 1

U.S. Const. amend. I ..................................................................... *passim*

U.S. Const. amend. XIV .......................................................................... 1

Pursuant to Fed. R. Civ. P. 56, Local Rules CV-7 and CV-56, and this Court's February 23, 2022 Order (Dkt. #17, Order Granting Pl.'s Mot. Extending Deadlines), Plaintiff Suzanne Jones respectfully submits this opposition to the motion for partial summary judgment by Defendants H. Neil Matkin and Toni Jenkins in their individual capacities.

## INTRODUCTION

Plaintiff Suzanne Jones worked at Collin College for nearly twenty years as an exemplary professor of education. Yet the College's senior leadership—Defendants Matkin and Jenkins—terminated Jones shortly after learning about her association with a union. In rejecting faculty and other administrators' recommendations to renew Jones's contract, Defendants Matkin and Jenkins cited her affiliation with a union and her criticism of the college's administration—both of which are protected by the First Amendment. Jones sued, alleging that Collin College and Defendants Matkin and Jenkins, in their individual and official capacities, violated her constitutional rights.[1]

Although Jones has not yet had the chance to gather evidence to support her allegations, Defendants Matkin and Jenkins now move for summary judgment, in their individual capacities, on the grounds of qualified immunity. Relying solely on a manufactured narrative based upon disputed facts, Defendants argue that the law is not clearly established that they violated Jones's constitutional rights.

The Court should deny Defendants' motion on any one of three grounds. First, the Court should deny the motion because the reason for Jones's termination remains a vigorously disputed fact on which the Court must base its qualified-immunity analysis. Second, the Court could deny

---

[1] Jones is no longer pursuing her claims for violations of the due process clause of the Fourteenth Amendment to the United States Constitution or the due course of law provision of the Texas Constitution, Article I § 19.

Defendants' motion as premature and order the parties to engage in discovery on the reason for Jones's termination and other facts relevant to the qualified-immunity analysis. Finally, summary judgment should be denied because when the Court considers the material facts in the light most favorable to Jones, the law is clearly established that terminating Jones for affiliating with a union and for protected speech violates the First Amendment.

## PLAINTIFF'S COUNTER STATEMENT OF ISSUES TO BE DECIDED

Whether Defendants are entitled to summary judgment on the basis of qualified immunity when (1) Plaintiff submits evidence disputing Defendants' self-serving assertions that her termination was not based on constitutionally protected conduct; (2) Plaintiff has not had the opportunity to collect evidence to prove her well-founded allegations in discovery; and (3) the law is clearly established that terminating a public employee for union affiliation and protected speech violates the First Amendment.

*Suggested Answer: No*

## RESPONSE TO DEFENDANTS' STATEMENT OF ISSUES TO BE DECIDED

Whether Plaintiff can meet her burden of showing that the defense of qualified immunity does not apply to her claims against Defendant Matkin in his individual capacity.

*Suggested Answer: Yes*

Whether Plaintiff can meet her burden of showing that the defense of qualified immunity does not apply to her claims against Defendant Jenkins in her individual capacity.

*Suggested Answer: Yes*

## RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS

## I.    Jones Was an Exemplary Professor for Twenty Years at Collin College.

Jones began working at Collin College in 2001. (Dkt. #5, Defs.' First Am. Answer ¶ 9). From 2001 to August 2017, Jones was a dedicated faculty member with no formal disciplinary

actions or reprimands from the College. Further, Jones received above-average teaching evaluations from students and above-average performance reviews by Collin College administrators. (Jones Decl. ¶ 6). In August 2017, Jones signed her name on a published open letter in the *Dallas Morning News* supporting the removal of confederate monuments in Dallas, listing "Collin College" under her signature. (Jones Decl. ¶ 8). On or about August 24, 2017, James N. Barko, the Dean of Student and Enrollment Services, asked Jones to remove "Collin College" from the published open letter. (Jones Decl. ¶ 9). On April 26, 2018, Jones entered into a full-time faculty contract with Collin College. Under the terms of the contract, Jones agreed to work at the College from August 15, 2018 to May 31, 2021. (Dkt. #1, Compl. ¶ 14; Dkt. #5, Defs.' First Am. Answer ¶ 13).

## II.   Jones Attempts to Raise Her Concerns About the College's COVID-19 Reopening Plan.

On March 31, 2020, Texas Governor Greg Abbott issued an Executive Order relating to the COVID-19 emergency. (Dkt. #1, Compl. ¶ 11; Dkt. #5, Defs.' First Am. Answer ¶ 16). At the time, Jones was a member of Collin College's Faculty Council, an uncompensated, voluntary group composed of faculty who are elected by their peers to provide nonbinding input into the governance of the College. (Jones Decl. ¶ 10). On the Faculty Council, Jones was the Chair of the Teaching and Learning Committee. (Jones Decl. ¶ 10). Jones had also been chosen as a Collin College Virtual Fellow, which meant she was specifically considered specialized in online teaching. (Jones Decl. ¶ 10). Given her background as an expert in educational curricula and instruction, Jones felt that her expertise concerning proven teaching methods was particularly useful for Collin College faculty facing novel conditions created by COVID-19. (Jones Decl. ¶ 10). Specifically, Jones wanted to create pedagogical options and resources for professors unfamiliar with online teaching. (Jones Decl. ¶ 10). Jones did not have any personal issues with

working in-person, but she received complaints from other faculty members concerning the prospect of returning to teach in-person. (Jones Decl. ¶ 12).

In order to bring the faculty's concerns and proposed solutions to the College, Jones and the Faculty Council issued a resolution that summarized the collective concerns of the faculty about teaching during COVID-19 on June 30, 2020. (Dkt. #1, Compl. ¶ 18, Ex. B; Dkt. #5, Defs.' First Am. Answer ¶ 17). In the resolution, the Faculty Council's lead recommendation was simply for the College to allow the faculty and other staff to provide input into teaching for the Fall 2020 semester. (Dkt. #1, Compl. ¶ 18, Ex. B; Dkt. #5, Defs.' First Am. Answer ¶ 17). On July 14, 2020, Defendant Matkin responded to the concerns of the Faculty Council by claiming that the members of the Council failed to do their jobs, stating that he knew twenty faculty members who wanted to teach in person and asserting that it is "ironic that some of the chief proponents of closing our campuses and going fully online failed to speak to the faculty they were charged to represent." (Dkt. #5, Defs.' First Am. Answer ¶ 18).

Jones continued to communicate her concerns to the administration. (Jones Decl. ¶ 13). As an example, on August 4, 2020, Jones emailed Defendant Jenkins the following message concerning working conditions for the College's faculty:

> Good morning. After our faculty council meeting last week, I was under the impression that all pre-semester meetings would be virtual. The minutes that went out to all faculty after the meeting stated that "Dr. Matkin and Dr. Jenkins assured us that pre-semester meetings would be virtual." Now, we are all receiving information that our Division meetings will be face to face and there will be food at some of them which of course means that masks will be off. Since I assume there is a virtual option for those with accommodations, I was wondering if others would be allowed to take that option for this meeting as well?

(Jones Decl. ¶ 13, Ex. A). Defendant Jenkins never responded to Jones's August 4, 2020, email concerning virtual options for employees who required accommodations. (Jones Decl. ¶ 14). In

short, Jones attempted to raise her concerns about the College's reopening to the appropriate

parties. In response, Matkin claimed that Jones failed to fulfill her uncompensated role on the

Faculty Council, and Jenkins ignored her.

### III.   Jones Engages in Expressive Association by Starting A Local Chapter of a Union and Criticizes the College's Reopening Plans Publicly.

As Matkin, Jenkins, and other administrators continued to attack or rebuff anyone who

questioned the College's reopening plans, Jones and other faculty members decided to organize a

chapter of the Texas Faculty Association ("TFA" or "the union") at the College. (Jones Decl.

¶ 15). TFA is the local affiliate of the Texas State Teachers Association and the National

Education Association and works to protect the rights of higher education faculty. (Jones Decl.

¶ 16). Jones agreed to serve as the secretary and treasurer of the union. (Jones Decl. ¶ 18).

On September 22, 2020, Jones responded to an email from Faculty Council president Kat

Balch to ask if Jones could announce the formation of the TFA chapter during the new business

section of the Faculty Council meeting. (Dkt. #1, Compl. ¶ 25, Ex. D; Dkt. #5, Defs.' First Am.

Answer ¶ 24). Before Jones's September 22, 2020 email, Jones had not informed any Collin

College administrator that she helped organize a union chapter for the College. (Jones Decl.

¶ 20). In response to Jones's email, Balch wrote as follows:

> Listen, I've just been advised that we absolutely cannot make an
> announcement about the existence or solicit membership in TFA as
> it's an organization clearly associated with state and national labor
> organizations/unions. The college doesn't allow us to use their
> time/space/resources (and our Webinar fits that definition of time
> and space AND resources) to recruit for groups like this. Thought
> you'd like to know.

(Dkt. #1, Compl. ¶ 25, Ex. D; Dkt. #5, Defs.' First Am. Answer ¶ 24). Balch then clarified that it

was Defendant Jenkins who communicated the College's position regarding the union. (Dkt. #1,

Compl. ¶ 25, Ex. D; Dkt. #5, Defs.' First Am. Answer ¶ 24). Under Defendant Jenkins's

direction, Balch did not permit Jones to announce the formation of the union chapter during a Faculty Council meeting. (Jones Decl. ¶ 21).

The union operates a website, texasfacultyassociation.org, which listed the various TFA chapters at institutions across Texas. Without her knowledge, the TFA listed the Collin College-Plano chapter on its website, providing Jones's personal email address as the contact information. (Jones Decl. ¶ 22). On September 28, 2020, Garry W. Evans, Collin College's Dean of Academic Affairs and Workforce, requested that Jones remove any mention of Collin College and her contact information on the union's website. (Jones Decl. ¶ 23; *disputed* in Dkt. #5, Defs.' First Am. Answer ¶ 29). During the call, Dean Evans told Jones that "I have dreaded calling you all day, but we need you to get the college's name off the [union] website because we cannot be associated with a union." (Jones Decl. ¶ 24).

Jones forwarded Dean Evans' request to the union; the union removed those details within forty-eight (48) hours. (Jones Decl. ¶ 25). During this time period, Dean Evans contacted Jones four (4) separate times to make sure she was disassociating herself from the union. (Jones Decl. ¶ 26). Shortly after her request, the union removed Jones's contact information from their website. (Jones Decl. ¶ 27). On or about December 15, 2020, the TFA Chapter at Collin College submitted a proposal for a panel at Collin College's Faculty Development Conference in January 2021. (Jones Decl. ¶ 28). The panel, entitled "Finding Your Voice," was expected to discuss academic freedom, free speech, and engagement with colleagues. (Jones Decl. ¶ 29). This panel was initially approved and designated a date and time slot. (Jones Decl. ¶ 30). Jenkins, acting in her capacity as the Vice President of Collin College, refused to provide a spot for the panel at the Faculty Development Conference. (Jones Decl. ¶ 31).

6

**IV.    Matkin and Jenkins Terminate Jones, in Part, Because of Her Affiliation With a Union.**

On January 28, 2021, the union had its first recruitment meeting at Collin College. The meeting had been previously publicized on social media. (Jones Decl. ¶ 32). On the same day, Mary Barnes-Tilley, a provost for Collin College, and Floyd Nickerson, Chief Human Resources Officer at Collin College, met with Jones and informed her that Collin College would not be renewing her teaching contract. (Dkt. #1, Compl. ¶ 39; Dkt. #5, Defs.' First Am. Answer ¶ 38). During this meeting, Barnes-Tilley provided Jones two reasons for her non-renewal: (1) Jones had challenged Collin College's reopening plans; and (2) on two occasions, the 2017 Incident and 2020 Incident, administrators had asked Jones to remove references to Collin College in publicly accessible websites. (Jones Decl. ¶ 34; *disputed* in Dkt. #5, Defs.' First Am. Answer ¶ 39). During this meeting, Barnes-Tilley told Jones that her Associate Dean, Dean, and Provost had signed off on her contract extension, but Matkin and Jenkins overruled the recommendation and decided to terminate her. (Jones Decl. ¶ 35; *disputed in part* in Dkt. #5, Defs.' First Am. Answer ¶ 40).

On February 10, 2021, Jones filed a nine-page grievance with thirty (30) exhibits consisting of over one hundred (100) pages alleging that Collin College, Matkin, and Jenkins violated Jones's First Amendment rights by terminating her for associating with the union and publicly advocating for changes to the College's reopening plan. (Jones Decl. ¶ 36). On March 4, 2021, Jenkins responded to Jones's Grievance in writing. In this response, Jenkins wrote that "Jones has demonstrated several characteristics of an excellent faculty member," "has had positive classroom evaluations and student evaluations," "stays current in her field," and "has been engaged in college service throughout her employment." (Dkt. #1, Compl. ¶ 49, Ex. G; Dkt. #5, Defs.' First Am. Answer ¶ 48). Jenkins asserted that her decision to terminate Jones was

based upon the following considerations: (1) Jones allowed the College's name to appear in the 2017 open letter concerning Confederate monuments; (2) "Jones took indirect means to exert external pressure on the college to not reopen as planned and to challenge operational decisions;" (3) " … Jones did not express her concerns through normal channels of communication through direct conversations with her associate dean, dean, campus provost, or other administrators." (Dkt. #1, Compl. ¶ 49, Ex. G; Dkt. #5, Defs.' First Am. Answer ¶ 48).

Jenkins, responding to Jones's allegations in her grievance, specifically denied that Jones's association with the union influenced her decision to terminate her. (Dkt. #1, Compl. ¶ 49, Ex. G; Dkt. #5, Defs.' First Am. Answer ¶ 48). Jones is certain that her association with the union was a motivating factor in Jenkins's decision to terminate her. (Jones Decl. ¶ 37). On March 8, 2020, Matkin responded to Jones's grievance in writing. In this response, Matkin, like Jenkins, referenced the 2017 open letter and 2020 union website association as justifications for his decision to non-renew Jones. (Dkt. #1, Compl. ¶ 52, Ex. H; Dkt. #5, Defs.' First Am. Answer ¶ 51). Although Matkin now seeks summary judgment based upon allegedly undisputed facts, Matkin stated in his response to Jones's grievance that he "disagree[ed] with Professor Jones's allegations and the mischaracterization of several facts contained in her complaint." (Dkt. #1, Compl. ¶ 52, Ex. H; Dkt. #5, Defs.' First Am. Answer ¶ 51). Like with Jenkins, Jones is certain that her affiliation with the union was a motivating factor in Matkin's decision to terminate her. (Jones Decl. ¶ 39).

Jones appealed the decision of Matkin and Jenkins through all appropriate channels at the College. (Dkt. #1, Compl. ¶ 62; Dkt. #5, Defs.' First Am. Answer ¶ 61). Ultimately, the Board of Trustees affirmed the decision through inaction. (Dkt. #1, Compl. ¶ 63, Dkt. #5, Defs.' First Am. Answer ¶ 62).

Jones alleged in her Complaint that Jenkins and Matkin made the decision to terminate Jones based upon her association with the union, and Defendants have denied Jones's well-founded allegation. (Dkt. #1, Compl. ¶ 69, Dkt. #5, Defs.' First Am. Answer ¶ 68). Jones also believes that Matkin and Jenkins communicated about her termination in writing, specifically through emails and text messages. (Jones Decl. ¶ 42). Because Defendants have denied a material fact (the reason for termination) and Jones has not had the opportunity to engage in discovery, this Court should deny Defendants' premature motion for partial summary judgment.

## PROCEDURAL HISTORY

On November 29, 2021, Defendants filed an answer that did not include the affirmative defense of qualified immunity. (Dkt. #3, Defs.' Original Answer, p. 15 of 16). On December 21, 2021, Defendants filed an amended answer asserting the defense of qualified immunity. (Dkt. #5, Defs.' First Am. Answer, p. 16 of 17). Notably, Defendants did not move to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6), the appropriate procedure for dismissing complaints that fail to state a plausible claim for relief.

On February 10, 2022, Defendants H. Neil Matkin and Toni Jenkins in their individual capacities moved to stay discovery and for partial summary judgment, invoking the defense of qualified immunity. (Dkt. #9, Defs.' Mot. for Summ. J.). Defendants sought to stay all discovery pending the outcome of their motion for partial summary judgment or, in the alternative, limit discovery to that required to resolve the motion. (Dkt. #8, Defs.' Mot. to Stay Disc. ¶¶ 15–16).[2]

---

[2] To date, the parties have exchanged initial disclosures as required by Fed. R. Civ. P. 26(a)(1). Jones has not propounded any written discovery or noticed any depositions. On March 1, 2022, this Court entered a scheduling order setting August 3, 2022, as the deadline for discovery to be completed. (Dkt. #18, Scheduling Order, p. 2 of 6).

On February 23, 2022, this Court granted Jones an extension of time: (1) to respond to Defendants' motion to stay discovery by March 10, 2022, and (2) to respond to the instant motion by March 17, 2022. (Dkt. #17, Order Granting Pl.'s Mot. Extending Deadlines). On March 10, 2022, Jones filed her Opposition to the Defendants Motion to Stay and/or Limit Discovery (Dkt. #19, Pl.'s Opp'n. to Defs.' Mot. to Stay Disc.).

## LEGAL ARGUMENT

Defendants are not entitled to summary judgment based on qualified immunity. When Defendants Matkin and Jenkins overturned the recommendation that Jones's contract be renewed, the law was clearly established that the First Amendment protects faculty members at public colleges when they associate with unions or speak on matters of public concern, and that a public institution may not use contract renewals as a vehicle to retaliate against protected speech.

Defendants did exactly this. The record on which Defendants rely—before discovery has commenced—consists of Defendants' memorandum with self-serving justifications for terminating Jones. On this record, Defendants assert that no evidence exists that their subjective motive for terminating Jones involved association or speech protected by the First Amendment. By moving for summary judgment based upon disputed facts, Defendants ignore the Federal Rules of Civil Procedure and clearly established law.

The Court should deny Defendants' motion on any one of three grounds. First, the Court should deny the motion because the reason for Jones's termination remains a vigorously disputed fact on which the Court must base its qualified-immunity analysis. Second, the Court could deny Defendants' motion as premature and order the parties to engage in discovery on the reason for Jones's termination and other facts relevant to the qualified-immunity analysis. Finally, summary judgment should be denied because when the Court considers the material facts in the light most

favorable to Jones, the law is clearly established that terminating Jones for affiliating with a union and for protected speech violates the First Amendment.

## I. Defendants' Motion for Summary Judgment Must Be Denied Because Jones Disputes the Basis for her Termination.

First, Jones has produced evidence that her association with a union motivated Defendants to terminate her, which is a violation of clearly established law and a fact Defendants dispute. Second, Jones must be permitted to develop a full factual record concerning the basis for her termination before this Court rules on qualified immunity. Consequently, this Court should deny Defendants' motion for partial summary judgment based on qualified immunity.

### A. Standard for summary judgment.

"The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses." *Swanson v. City of Plano, Tex.*, No. 4:19-CV-412, 2020 WL 6799173, at *1 (E.D. Tex. Nov. 19, 2020) (Mazzant, J.) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). "The party moving for summary judgment bears the initial burden of identifying … [record evidence] … that demonstrate[s] the absence of a genuine issue of material fact." *Id.* (citation omitted). If the movant "fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response." *Quorum Health Res., L.L.C. v. Maverick Cnty. Hosp. Dist.*, 308 F.3d 451, 471 (5th Cir. 2002) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)). If the movant can meet this burden, the "nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment." *Swanson*, 2020 WL 6799173 at *2. A nonmovant will defeat summary judgment if she can produce evidence that shows "that there exists a genuine issue of material fact." *Id.* When ruling on a motion for summary judgment, "[c]ourts must 'draw all reasonable

inferences in favor of the nonmoving party' and 'refrain from making credibility determinations or weighing the evidence.'" *Id.* (citations omitted).

A motion for summary judgment premised upon qualified immunity shifts the initial burden to the nonmovant, but it only changes the calculation for summary judgment insofar as the nonmovant must show, in addition to a genuine dispute of material fact, that "the plaintiff's version of those disputed facts . . . also constitute[s] a violation of clearly established law." *Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020). Ultimately, under qualified immunity, "[a] court decides whether summary judgment is appropriate by viewing the facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in its favor (so far normal), then determining whether the plaintiff can prove a constitutional violation (still normal) that was clearly established (not normal)." *Id.* (internal quotation and brackets omitted). As discussed below, a genuine issue of disputed fact remains in this case, which establishes a violation of clearly established law, thus this Court should deny Defendants' motion.

**B.      Jones's association with the union was a motivating factor in the decision of Jenkins and Matkin to terminate her—a material fact that precludes summary judgment.**

As alleged in the Complaint and corroborated in Jones's declaration, Jones's affiliation with the union was a substantial or motivating factor in the decision by Defendants Jenkins and Matkin to terminate her. The Fifth Circuit has held a court must not grant summary judgment in First Amendment retaliation cases where the basis for the termination is disputed. In opposing a motion for summary judgment in a First Amendment retaliation claim, "[c]ircumstantial evidence is equally as probative as direct evidence in proving illegitimate intent." *Tompkins v. Vickers*, 26 F.3d 603, 609 (5th Cir. 1994). In *Tompkins*, a school teacher had worked in a district for 21 years with an exemplary record. *Id*. After he publicly criticized the superintendent and other administrators, the district transferred him. *Id.* Circumstantial evidence, including the

teacher's lack of prior reprimands, above-average teaching evaluations, the timing of the transfer after the teacher's public comments, the unusual steps taken to effectuate the transfer, and the superintendent's verbal response to the teacher's objection to the transfer was "sufficient evidence of an unconstitutional motive to overcome summary judgment." *Id.*

Jones has evidence to support her belief that her affiliation with the union was a substantial or motivating factor in Defendants Jenkins's and Matkin's decision to terminate her. First, Jones has direct evidence of the College subverting unionization because Dean Evans— when directed by Jenkins to "address" the union's reference to Collin College with Jones (Dkt. #9, Defs.' Mot. for Summ. J., Ex. 2, p. 4 of 34)—personally told Jones that "… we need you to get the college's name off the [union's] website **because we cannot be associated with a union**." (Jones Decl. ¶ 24) (emphasis added). Second, Jenkins instructed Balch not to permit the Faculty Council to discuss the union because of its affiliation with a national union, asserting that the college "would not" permit others to "use . . . any time, space or resources to solicit membership in this organization." (Dkt. #9-2, Defs.' Mot. for Summ. J., Ex. 2, p. 4 of 34). As Balch summarized in an email, "Listen, I've been advised that we absolutely cannot make an announcement about the existence or solicit membership in **[the union] as it's an organization clearly associated with state and national labor organizations/unions**." (Dkt. #1, Compl. Ex. D; Dkt. #5, Defs.' First Am. Answer ¶ 24) (emphasis added). Third, Jenkins exhibited anti-union bias by personally prohibiting Jones from announcing the union at a Faculty Council meeting and canceling the union's already approved panel for Collin College's Faculty Development Conference in January 2021. (Jones Decl. ¶¶ 21, 31). Finally, like the plaintiff in *Tompkins* who worked for a school for over twenty years with positive evaluations and no reprimands before termination, Jones worked at the College with an exemplary record for over twenty years but was

terminated once the College became aware of her union affiliation. (Jones Decl. ¶¶ 6, 20, 37, 39).

Despite these facts showing that the College and Jenkins disfavored unions, Defendants assert that it is undisputed that "Dr. Jenkins was clear that her recommendation for non-renewal was not based on Plaintiff's membership in the [the union] – 'Professor Jones is welcome to join any external organization she chooses to join, as is any employee of the college." (Dkt. #9, Defs.' Mot. For Summ. J., p. 5 of 16). Jones whole-heartedly disputes Jenkins's self-serving claim that Jones's union affiliation had nothing to do with her decision to overturn the decision to extend Jones's contract made by her Associate Dean, Dean, and Provost, and she is certain her association with the union was a motivating factor in Jenkins's decision to terminate her. (Jones Decl. ¶ 37). Similarly, Jones is certain that her union association was a motivating factor in Matkin's decision overturn the recommendation for renewal of Jones's contract. (Jones Decl. ¶ 39). Given that Defendants Matkin and Jenkins deny the most important fact in this case—the basis for the termination decision—there is simply no way summary judgment is appropriate at this time.

Because Jones has evidence that her union affiliation was a motivating factor in her termination, this Court should deny Defendants' motion for partial summary judgment in its entirety.

> ### C.   Deciding the qualified immunity issue before discovery is premature, and Jones must be permitted discovery to develop a full factual record of Jenkins's and Matkin's unconstitutional motivation for terminating her.

If this Court does not deny the motion, then this Court should defer ruling on Defendants' motion because the parties dispute the motivations of Jenkins and Matkin in terminating Jones. (Dkt. #1, Compl. ¶ 69; Dkt. #5, Defs.' First Am. Answer ¶ 68). Because Defendants moved for

summary judgment before the parties began discovery, Jones has not had the opportunity to collect evidence such as deposition testimony and electronic communications to prove her well-founded, specific allegation that her union affiliation and speech on matters of public concern, including criticism of Defendants' response to the COVID-19 pandemic, motivated Jenkins and Matkin. (Jones Decl. ¶¶ 37, 39). As such, this Court should defer ruling on Defendants' motion to allow the parties to engage into discovery concerning whether Jones's union affiliation motivated Jenkins and Matkin.

Motions for summary judgment predicated on a lack of evidence are disfavored before there has been "adequate time for discovery[.]" *Celotex*, 477 U.S. at 322. Under Fed. R. Civ. P. 56(d), if the nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the Court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." *Harris v. Ross Stores, Inc.*, No. 4:17-CV-00237, 2018 WL 1625647, at *4 (E.D. Tex. Apr. 4, 2018) (Mazzant, J.) (citations and internal quotation marks omitted). The Fifth Circuit has instructed trial courts to liberally grant requests under Fed. R. Civ. P. 56(d). *Id.* (citation omitted). In order to obtain a continuance of a motion for summary judgment, the nonmovant must "specifically explain both why it is currently unable to present evidence creating a genuine issue of fact and how a continuance would enable the party to present such evidence." *Id.* (citation omitted).

Here, Jones is certain that her association with the union was a motivating factor in the decision of Matkin and Jenkins to terminate her. (Jones Decl. ¶¶ 37, 39). Jones also believes that Matkin and Jenkins communicated about her termination in writing, specifically through emails and text messages to which Jones does not have access. (Jones Decl. ¶ 42). Without the benefit

of written discovery requests and depositions of Matkin and Jenkins concerning the basis for her

termination, Jones will not be able to collect the evidence necessary to prove her allegation that

her association with a union was a motivating factor in their decision to terminate her. (Jones

Decl. ¶¶ 45-46).

As noted in Jones's opposition to stay discovery (Dkt. #19, Pl.'s Opp'n. to Defs.' Mot. to

Stay Disc. p. 5 of 11), the Fifth Circuit has instructed trial courts to "issue a discovery order

'narrowly tailored to uncover only those facts needed to rule on the [qualified] immunity claim'"

when the plaintiff's complaint states a plausible claim for relief. *Backe v. LeBlanc*, 691 F.3d 645,

648 (5th Cir. 2012) (quoting *Lion Boulos v. Wilson*, 834 F.2d 504, 507 (5th Cir. 1987)). As

explained more fully below, Jones has stated a plausible claim for relief, which has not been

challenged by Defendants under Fed. R. Civ. P. 12(b)(6). Because Jones has not had the

opportunity to depose Jenkins and Matkin or review electronic communications sent during the

period when they made the decision to terminate Jones, the Court must permit discovery against

Matkin and Jenkins in their individual capacities concerning the decision to terminate Jones

under Fed. R. Civ. P. 56(d).

## II.     Defendants Are Not Entitled to Qualified Immunity for their Decision to Overturn Renewal of Jones's Contract Due to Her Association with the Union and Speech on Matters of Public Concern.

This Court should deny qualified immunity to public officials whose actions violate

clearly established law—that is, constitutional rights of which a reasonable administrator would

have known. Defendants violated clearly established law by non-renewing Jones's contract due

to her association with a teacher's union. Defendants also violated clearly established law by

non-renewing Jones's contract due to her speech on matters of public concern. Consequently,

this Court should deny Defendants' motion for partial summary judgment based on qualified

immunity.

16

**A.    Qualified immunity is inappropriate where the law gives officials 'fair warning' of constitutional rights.**

Qualified immunity is inappropriate where plaintiff can show "first, that the officials violated her First Amendment rights, and second, that their actions were objectively unreasonable in light of clearly established law." *Villarreal v. City of Laredo, Tex.*, 17 F.4th 532, 538 (5th Cir. 2021) (denying police officers qualified immunity against plaintiff's First Amendment claim because the law clearly established officers cannot arrest journalists for asking questions).

Defendant asks this Court to grant qualified immunity based on the theory that Plaintiff:

> cannot identify a case wherein a supervisor who recommended the non-renewal of a teacher's expiring contract was held to violate the First Amendment when that teacher both fails to comply with the college's policy regarding the use of its name and fails to work collaboratively through shared governance using administrative channels of communication with respect to operational issues affecting the teacher's job.

(Dkt. #9, Defs.' Mot. for Summ. J. ¶¶ 4.13, 4.16). As discussed above, the basis for Jones's termination remains a genuine issue of disputed fact—but even so, in order to show a defendant violated clearly established law a plaintiff need not "identify a case" with so specific a holding. Demonstrating the law was clearly established does "not require a case directly on point[.]" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Instead, "the crucial question in this inquiry is whether 'a reasonable official would understand that what he is doing violates [a constitutional] right.'" *Villarreal*, 17 F.4th at 538–39 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "The central concept is that of 'fair warning.'" *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)).

A plaintiff can show the law was clearly established by pointing to "controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right

in question with a high degree of particularity." *Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (internal quotations omitted). However, the Fifth Circuit has also recognized that "[t]he doctrine of qualified immunity does not always require the plaintiff to cite binding case law involving identical facts," and "[a]n official who commits a patently 'obvious' violation of the Constitution is not entitled to qualified immunity." *Villarreal*, 17 F.4th at 540 (citing *Hope*, 536 U.S. at 745).

As set forth below, decisions of the Supreme Court, the Fifth Circuit, and persuasive authority from other courts demonstrate that reasonable university administrators would have known they could not lawfully retaliate against a professor for exercising her First Amendment rights to freedom of association and freedom of speech.

### B.      Defendants violated clearly established law by nonrenewing Jones's contract due to her association with a union.

The First Amendment[3] "encompasses the right of public employees to join unions and the right of their unions to engage in advocacy and to petition government in their behalf." *Pro. Ass'n of Coll. Educators, TSTA/NEA v. El Paso Cnty. Cmty. Coll. Dist.*, 730 F.2d 258, 262 (5th Cir. 1984). In the Fifth Circuit, it has long been "clear that the First Amendment protects an employee's right to associate with a union," and "no independent proof of public concern is required in a freedom of association claim arising from union organization activity." *Boddie v. City of Columbus, Miss.*, 989 F.2d 745, 748–49 (5th Cir. 1993) (holding this was clearly established at least as early as 1987).

---

[3] Courts have recognized that claims for retaliation based on free speech are analyzed coextensively under the First Amendment of the United States Constitution and Article I, Section 8 of the Texas Constitution. *Operation Rescue-Nat'l v. Planned Parenthood*, 975 S.W.2d 546, 559 (Tex. 1998). As such, Jones's arguments concerning her First Amendment rights apply with equal force as to her claims under Article I, Section 8 of the Texas Constitution.

Consequently, to establish a First Amendment association retaliation claim in this Circuit, plaintiff must show "(1) [she] suffered an adverse employment action, (2) [her] interest in 'associating' outweighed [her employer's] interest in efficiency, and (3) [her] protected activity was a substantial or motivating factor in the adverse employment action." *Hitt v. Connell*, 301 F.3d 240, 246 (5th Cir. 2002). Defendants should have known that terminating Jones violated her right to be free from retaliation for exercising her freedom of association.

Regarding the first element, Jones suffered an adverse employment action because she was terminated. (Jones Decl. ¶ 35). It has long been well-established that educational institutions may not refuse the renewal of a teacher's contract due to their exercise of rights protected by the First Amendment. In 1972, the Supreme Court reaffirmed that "the nonrenewal of a nontenured public school teacher's one-year contract may not be predicated on his exercise of First and Fourteenth Amendment rights." *Perry v. Sindermann*, 408 U.S. 593, 598 (1972). The Fifth Circuit, in accord, has applied this same principle to the context of untenured faculty who criticized their public colleges, *Montgomery v. Boshears*, 698 F.2d 739, 742–43 (5th Cir. 1983), or who sought to organize disfavored faculty unions. *Goss v. San Jacinto Junior Coll.*, 588 F.2d 96, 99 (5th Cir. 1979).

As to the second element, Jones's interest in exercising her right to freedom of association outweighs the College's interest in efficiency. Defendants have not alleged any efficiency interest in preventing Jones from associating with a union. To the contrary, Jenkins described Jones as an "excellent faculty member" with "positive" student and classroom evaluations, who stays "engaged" and "current in her field" after her termination. (Dkt. #1, Compl. ¶ 49, Ex. G; Dkt. #5, Defs.' First Am. Answer ¶ 48). Further, the Fifth Circuit has held that defendants "are not insulated from their unconstitutional conduct merely because a

19

balancing test is involved." *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 224 (5th Cir. 1999). This is consistent with the Supreme Court's holdings that, to overcome a defense of qualified immunity, a plaintiff need not show that "the very action in question has previously been held unlawful." *Anderson*, 483 U.S. at 640. Simply stated, Jones's association with a union had no negative impact on the functioning of the College, thus her interest in associating with a union overcomes the College's interest in efficiency.

Finally, the third element remains a question of disputed fact, but Jones has alleged facts to establish her claim. Jones has alleged that her protected activity was a substantial or motivating factor in the adverse employment action because she alleged that she was terminated because of her protected association with a union. (Dkt. #1, Compl. ¶¶ 69, 75). As the Fifth Circuit has held, "summary disposition of the causation issue in First Amendment retaliation claims is generally inappropriate." *Haverda v. Hays Cnty.*, 723 F.3d 586, 595 (5th Cir. 2013). Summary judgment is all the more inappropriate here, where Jones has not had any opportunity to conduct discovery to develop a record and the reason for termination remains disputed.

Because Jones has established each element of her First Amendment association retaliation claim based upon well-established law, this Court should deny Defendants' motion for partial summary judgment on qualified immunity.

### C.    Defendants violated clearly established law by nonrenewing Jones's contract due to speech on matters of public concern.

Defendants' nonrenewal of Jones's contract was also motivated by her exercise of the First Amendment right to speak as a private citizen on matters of public concern.

It has long been clearly established that the First Amendment bars retaliation against public employees for expression on a matter of public concern. *See Pickering v. Bd. of Educ.*, 391 U.S. 563, 574 (1968) (holding "a teacher's exercise of his right to speak on issues of public

importance may not furnish the basis for his dismissal from public employment."). *Buchanan v.*
*Alexander*, decided by the Fifth Circuit nearly two years before Jones's termination, explained
that "[t]he Supreme Court has established that academic freedom is 'a special concern of the
First Amendment, which does not tolerate laws that cast a pall of orthodoxy over the
classroom.'" 919 F.3d 847, 852 (5th Cir. 2019) (quoting *Keyishian v. Bd. of Regents*, 385 U.S.
589, 603 (1967)). Accordingly, the Fifth Circuit has specifically articulated that the First
Amendment protects public university professors where "(1) they were disciplined or fired for
speech that is a matter of public concern, and (2) their interest in the speech outweighed the
university's interest in regulating the speech." *Id.* at 853. Defendants should reasonably have
known that terminating Jones's contract violated her right to be free from retaliation for her
speech on a matter of public concern.

Regarding the first element, Jones suffered an adverse employment action because she
was terminated, and it has long been well-established that educational institutions may not refuse
the renewal of a teacher's contract due to the teacher's exercise of First Amendment rights.
(Jones Decl. ¶¶ 37, 39; *Sindermann,* 408 U.S. at 598).

Defendants discharged Jones because she spoke out on matters of public concern.
"Matters of public concern are those which can 'be fairly considered as relating to any matter of
political, social, or other concern to the community.'" *Branton v. City of Dallas, Tex.*, 272 F.3d
730, 739 (5th Cir. 2001) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). Both an ongoing
global pandemic and unionization efforts are obviously of public concern, thus satisfying the first
element of First Amendment retaliation *prima facie* test. *See Villarreal*, 17 F.4th at 540 ("An
official who commits a patently 'obvious' violation of the Constitution is not entitled to qualified
immunity."). Indeed, the Fifth Circuit has expressly held that "speech in the context of union

activity will seldom be personal; most often it will be political speech." *Boddie*, 989 F.2d at 750. Jones's speech regarding her union activity, including the union's use of the College's name, were political in nature and, therefore of public concern.

Additionally, the Fifth Circuit and other circuits agree that public health risks and government management thereof are matters of public concern. *See Frazier v. King*, 873 F.2d 820, 825 (5th Cir. 1989) (holding "the quality of nursing care given to any group of people, including inmates, is a matter of public concern." (citation omitted)); *Myers v. Hasara*, 226 F.3d 821, 827 (7th Cir. 2000) (holding a public employee's complaints regarding non-enforcement of public health code violations involved a matter of public concern); *Ramirez v. Okla. Dep't of Mental Health*, 41 F.3d 584, 593 (10th Cir. 1994) (holding grievance filed by state psychiatrist regarding quality of nursing care in a public hospital involved a matter of public concern).

Even though the COVID-19 pandemic had been ongoing for less than a year when defendants terminated Jones, other courts had already held by that time that speech regarding the pandemic involved a matter of public concern. *See Mullen v. Tiverton Sch. Dist.*, 504 F. Supp. 3d 21, 29 (D.R.I. 2020) (holding a public school's distance learning plan for the COVID-19 pandemic "is of paramount importance to the broader public"); *Woolslayer v. Driscoll*, CV 20-573, 2020 WL 5983078, at *4 (W.D. Pa. Oct. 8, 2020) (holding a university employee's warning to colleagues regarding risk of COVID-19 exposure involved a matter of public concern to both the school and surrounding community).

Despite Defendants' attempt to characterize Jones's speech as "an internal employment dispute," *see* Dkt. #9, Defs.' Mot. for Summ. J., p. 12 of 16, both controlling authority and a robust consensus of persuasive authority clearly establish that, when Jones spoke about the College's COVID-19 policies, she spoke on a matter of public concern. Moreover, Defendants'

attempt to classify Jones's dispute as "internal" contradicts one of Jenkins's proffered reasons for her termination: "Professor Jones did not express her concerns through normal channels of communication through direct conversations with her associate dean, dean, campus provost, or other administrators." (Dkt. #1, Compl. ¶ 49, Ex. G; Dkt. #5, Defs.' First Am. Answer ¶ 48). As Defendants likely know, rather than being any kind of independent grounds for discipline, the Fifth Circuit long ago held the "choice to inform someone outside [the workplace]" renders speech *more* likely to be on a matter of public concern. *Modica v. Taylor*, 465 F.3d 174, 181 (5th Cir. 2006). Consequently, Defendants should have reasonably understood that, when they took adverse action against Jones for going outside "normal channels of communication" to express her concerns regarding the College's COVID-19 plan, they violated her First Amendment free speech rights.

As to the second element of First Amendment retaliation for speech, Jones's interests in speaking on matters of public concern outweigh the College's interest in efficiency. As noted in the previous section, Defendants have not alleged that Jones's speech hindered operations or that her speech impeded Jones from carrying out her job. To the contrary, Jenkins described Jones as an "excellent faculty member" with "positive" student and classroom evaluations, who stays "engaged" and "current in her field" after her termination. (Dkt. #1, Compl. ¶ 49, Ex. G; Dkt. #5, Defs.' First Am. Answer ¶ 48). Once again, Jones's protected speech had no negative impact on the functioning of the College.

Finally, the third element remains a question of disputed fact, but Jones has alleged facts to establish her claim. Jones has alleged that her protected activity was a substantial or motivating factor in the adverse employment action because she alleged that she was terminated because of her protected speech. (Dkt. #1, Compl. ¶¶ 69, 75). As noted above, summary

judgment is simply inappropriate here, where Jones has not had any opportunity to conduct discovery to develop a record and the reason for termination remains disputed.

Because Jones has established each element of her First Amendment retaliation claim based upon well-established law and evidence, this Court should deny Defendants' motion for partial summary judgment.

## CONCLUSION

For the foregoing reasons, this Court should deny the motion for partial summary judgment based on qualified immunity of Defendants H. Neil Matkin and Toni Jenkins in their individual capacities.

Respectfully Submitted,

/s/ Greg H. Greubel
GREG HAROLD GREUBEL*
PA Bar No. 321130; NJ Bar No. 171622015;
CA Bar. No. 343028
JOSHUA T. BLEISCH*
IN Bar No. 35859-53
JEFFREY D. ZEMAN*
PA Bar No. 382570; MI Bar No. P76610
FOUNDATION FOR INDIVIDUAL RIGHTS
    IN EDUCATION
510 Walnut Street; Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473
greg.greubel@thefire.org
josh.bleisch@thefire.org
jeff.zeman@thefire.org

*Admitted *Pro Hac Vice*

/s/ Robert W. Schmidt
Robert W. Schmidt
TX Bar No. 17775429
CREWS LAW FIRM, P.C.
701 Brazos Street; Suite 900
Austin, TX 78701
Tel: (512) 346-7077, Ext. 103
schmidt@crewsfirm.com

*Counsel for Plaintiff Suzanne Jones*

## <u>CERTIFICATE OF SERVICE</u>

Plaintiff's counsel confirms that a true and correct copy of the foregoing was served via the Court's electronic filing system on this day, March 17, 2022.

*/s/ Greg H. Greubel*
Greg H. Greubel
