# United States District Court
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

SUZANNE JONES,

§
§
§

    *Plaintiff*,

§
§

v.

§
§

Civil Action No. 4:21-CV-00733

§

Judge Mazzant

H. NEIL MATKIN, in his personal and
official capacity; TONI JENKINS, in her
personal and official capacity; and COLLIN
COLLEGE,

§
§
§
§
§

    *Defendants*.

§

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants H. Neil Matkin and Toni Jenkins' Motion for Summary Judgment on Qualified Immunity, filed in Defendants' individual capacities (Dkt. #9). Having considered the motion and the relevant pleadings, the Court finds the motion should be **DENIED**.

## BACKGROUND

Dr. Suzanne Jones ("Plaintiff") worked as a teacher and professor at Collin College (a named Defendant in this action) for nearly twenty years. She was admired by her students and consistently received above-average teaching evaluations from students, as well as above-average performance reviews by Collin College. As of August 2017, Plaintiff had never received reprimand or formal disciplinary action from the Collin College administration.

In August 2017, the *Dallas Morning News* published an open letter supporting the removal of confederate monuments in Dallas. Plaintiff signed her name on the open letter and listed "Collin College" under her signature. Faculty members at other public institutions also signed the petition

and included the name of their college or university under their signature (Dkt. #1-7). On August 24, 2017, the Collin College Dean of Student and Enrollment Service asked Plaintiff to remove the reference to the college from the letter.

In April 2018, Plaintiff signed a three-year full-time faculty contract (the "Contract") with Collin College that included the following terms:

> The Contract is subject to Collin College's Board Policies, Collin College's Core Values, rules, procedures, regulations, and all applicable state and federal laws and regulations. Therefore, [Plaintiff] agrees to comply with Collin College's Board policies, Colling College Core Values, rules, procedures, regulations, all applicable federal and state law and any administrative directives

(Dkt. #9 at p. 3).

In fall 2018, the Collin College faculty elected Plaintiff to the Faculty Council (the "Council"), a voluntary group that serves to provide input into Collin College's governances. As a faculty member with expertise in educational curriculum and instruction, Plaintiff was "specifically considered specialized in online teaching" (Dkt. #22-1 ¶ 10).

This specialization became particularly important in 2020 when the COVID-19 pandemic disrupted the globe and created novel issues for educators and higher-ed administrators. Having received complaints from their colleagues about the prospect of returning to in-person teaching, Plaintiff and the Council issued a resolution to Collin College that summarized the collective concerns of the faculty about teaching during the pandemic, and it proposed solutions pursuant to those concerns. The District President of Collin College, Defendant Dr. H. Neil Matkin ("Defendant Matkin"), was not pleased with the resolution. He expressed that the Council may not have fully represented the faculty, "find[ing] it ironic that some of the chief proponents of closing [the] campuses and going fully online failed to speak to the faculty they were charged to represent" (Dkt. #5 ¶ 18).

Plaintiff continued communicating her concerns to the senior administration. On August 4, 2020, Plaintiff emailed the Vice President of Collin College, Defendant Dr. Toni Jenkins ("Defendant Jenkins"), inquiring as to whether pre-semester faculty meetings would have a virtual attendance option for those with accommodations. Defendant Jenkins never responded. Additionally, Plaintiff posted on a social media account that Collin College was requiring many teachers and students to return to class in-person. She urged followers to "consider emailing the college president, Dr Matkin, and asking for a simple solution" (Dkt. #9-2).

Soon after this, Plaintiff and other faculty members organized a Collin College chapter of the Texas Faculty Association (the "TFA" or the "union"), a local affiliate of the Texas State Teachers Association and the National Education Association. The union's mission is to protect the rights of higher education faculty. Plaintiff agreed to serve as the secretary and treasurer of the local union chapter. Without Plaintiff's knowledge, the union listed this local chapter as the "Collin College-Plano" local chapter on its website, providing Plaintiff's personal email address as the contact information.

Several issues related to the local union chapter arose between Plaintiff and Collin College in the following months. Prior to September 2020, the Collin College administration was unaware of Plaintiff's role in helping to organize the college's union chapter. On September 22, 2020, Plaintiff asked the Council president, Dr. Kat Balch, if Plaintiff could announce the local union chapter during the Council meeting. Dr. Balch responded that Defendant Jenkins had advised that faculty members "absolutely [could not] make an announcement about the existence or solicit membership in TFA as it's an organization clearly associated with state and national labor organizations/unions" (Dkt. #1 ¶ 25).

On September 28, 2020, the Collin College Dean of Academic Affairs and Workforce

called Plaintiff to request that she remove any mention of Collin College, as well as Plaintiff's contact information, from the union's website. During the call, the Dean relayed to Plaintiff, "I have dreaded calling you all day, but we need you to get the college's name off the [union] website because we cannot be associated with a union" (Dkt. #22 at p. 6). Within 48 hours, the union removed the details. Then, in December 2020, the local union chapter submitted a proposal for a panel at Collin College's Faculty Development Conference, which was initially approved and designated a specific presentation slot. After the panel had been approved, Defendant Jenkins pulled the presentation from the schedule.

The local union chapter held its first recruitment meeting at Collin College on January 28, 2021 after advertising the event on social media. That same day, Mary Barnes-Tilley, a provost for Collin College, and Chief Human Resources Officer, Floyd Nickerson, met with Plaintiff and informed her that Collin College would not be renewing her teaching contract. Plaintiff learned at this meeting that three senior faculty members had recommended Plaintiff's contract extension— but that Defendants Matkin and Jenkins overruled those recommendations. In making her nonrenewal recommendation, Defendant Jenkins asserts she considered the following criteria, which is outlined in the Collin College Board's policies:

- Whether the faculty member advances the vision and mission of the college;

- Whether the faculty member follows established policies, procedures and channels of communication;

- Whether the faculty member serves effectively on committees, task forces, or other planning structures, which is part of [the faculty's] shared governance responsibilities;

- Whether the faculty member adheres to [the college's] core values; and

- Whether the faculty member collaborates well or professionally with other faculty and staff, and others.

(Dkt. #9 at pp. 3–4). Plaintiff, however, responds that she was provided two reasons for the nonrenewal: (1) for challenging Collin College's COVID-19 reopening plans; and (2) for referencing Collin College in publicly accessible websites on two occasions (Dkt. #1 ¶ 40).

Plaintiff then turned to the college's grievance procedures. She sent a letter to the appropriate review panel requesting that it grant her grievance and reinstate her to the three-year contract that her dean, associate dean, and provost had previously approved (Dkt. #1 ¶ 43). In her nine-page grievance with thirty attached exhibits, Plaintiff alleged that, by refusing to renew her contract, Collin College, Matkin, and Jenkins violated the First Amendment of the United States Constitution, as well as Article I §§ 8, 27 of the Texas Constitution.[1]

Both Defendants Jenkins and Matkin responded to this grievance in writing. In these responses, Defendants expressed that the nonrenewal was based on Plaintiff's improper use of Collin College's name in publicly accessible websites in 2017 and 2020 and her decisions to "exert external pressure on the college to not reopen as planned," thereby undermining decisions made by the Board of Trustees (Dkt. #1-7 at pp. 3–4). Defendant Jenkins also acknowledged that Plaintiff had "demonstrated several characteristics of an excellent faculty member"; received "positive classroom evaluations and student evaluations"; and "been engaged in college service throughout her employment" (Dkt. #22 at p. 13).

After asserting her grievance through all the appropriate channels, Plaintiff's nonrenewal appeal was denied. Accordingly, on September 22, 2021, Plaintiff brought the present action under

---

[1] The Court notes that Plaintiff also alleged violations of the Fourteenth Amendment due process clause and Article I § 19 of the Texas Constitution in her grievance. She initially asserted those claims in this Court but has decided not to pursue them further (Dkt. #22 at p. 7 n.1).

42 U.S.C. § 1983, asserting claims against Defendant Matkin and Defendant Jenkins in both their official and individual capacities (collectively, "Defendants")[2] for violating the First Amendment of the United States Constitution, as well as Article I §§ 8, 27 of the Texas Constitution. Plaintiff specifically alleges that Defendants unconstitutionally retaliated against her for exercising her rights to free speech and free association.

On February 10, 2022, Defendants in their individual capacities moved to stay discovery and for partial summary judgment, invoking the defense of qualified immunity (Dkts. #8–9). Plaintiff responded to the present motion on March 17, 2022 (Dkt. #22). On March 24, 2022, Defendants replied (Dkt. #24), and on March 31, 2022, Plaintiff filed her sur-reply (Dkt. #25).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248. Typically, the party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. However, a qualified immunity defense "changes the nature

---

[2] Collin College is also a named Defendant in this action but is a non-movant for purposes of the current motion for summary judgment.

of the summary-judgment burden, how and when the burden shifts, and what it takes to satisfy the burden." *Joseph v. Bartlett*, 981 F.3d 319, 329 (5th Cir. 2020); *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

The doctrine of qualified immunity protects government officials from suit "unless their conduct violates a clearly established constitutional right." *DePree v. Saunders*, 588 F.3d 282, 287 (5th Cir. 2009) (citations omitted). This immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* A plaintiff seeking to defeat qualified immunity must show: "(1) a violation of a constitutional right" and "(2) that the right at issue was clearly established at the time of the violation." *Id.* When a defendant asserts qualified immunity in a motion for summary judgment, "[t]he plaintiff must show that there is a genuine dispute of material fact and that "the plaintiff's version of those disputed facts . . . constitute a violation of clearly established [constitutional] law." *Joseph*, 981 F.3d at 330. Still, the court is to "view[] the facts in the light most favorable to the nonmoving party and draw[] all reasonable inferences in its favor." *Id.* Moreover, the court must consider all of the evidence but refrain from making any credibility determinations or weighing the evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Defendants move for summary judgment on the basis of qualified immunity. Specifically, Defendants assert they are entitled to summary judgment because Plaintiff has not alleged facts sufficient to establish that Defendants' conduct violated "clearly established" free speech and association rights (Dkt. #9 at p. 13). Plaintiff responds that Defendants violated clearly established law by nonrenewing Plaintiff's contract because of her association with a union and her speech on matters of public concern (Dkt. #22 at p. 20). The Court first considers whether Plaintiff has

evinced facts that constitute a constitutional violation. *See Vincent v. City of Sulphur*, 805 F.2d 543, 547 (5th Cir. 2015) (indicating the district court has discretion to consider either qualified immunity prong first). Second, the Court considers whether the Defendants' conduct was in violation of clearly established law.

## I. Constitutional Violation

To overcome Defendants' motion for summary judgment on qualified immunity, Plaintiff "must show that there is a genuine dispute of material fact and that a jury could return a verdict entitling [her] to relief for a constitutional injury." *Joseph*, 981 F.3d at 330. Viewing the facts in the light most favorable to Plaintiff, the Court considers whether Plaintiff has offered evidence that demonstrates a violation of her freedom of speech and/or her freedom of association under the First Amendment.

### A. Freedom of Speech

Plaintiff alleges that Defendants nonrenewed her teaching contract in retaliation against her speaking as a private citizen on a matter of public concern. Specifically, Plaintiff alleges that Defendants' nonrenewal of her contract was motivated by their disapproval of Plaintiff's speech regarding confederate monuments, the global pandemic, and unions.

"[T]he First Amendment prohibits a public employer from retaliating against an employee for exercising his right to speak on a matter of public concern." *Tompkins v. Vickers*, 26 F.3d 603, 606 (5th Cir. 1994). A First Amendment retaliation claim involving the employment relationship contains four elements: (1) the plaintiff suffered an adverse employment decision; (2) the plaintiff's speech involved a matter of public concern; (3) the plaintiff's interest in commenting on the matter of public concern outweighs the defendants' interest in promoting workplace efficiency; and (4) the protected speech motivated the defendants' actions. *DePree v. Saunders*,

588 F.3d 282, 286–87 (5th Cir. 2009), *abrogated on other grounds by Sims v. City of Madisonville*, 894 F.3d 632, 640 (5th Cir. 2018). When a public university professor asserts a First Amendment speech claim, the second and third elements are analyzed under the *Pickering-Connick* balancing standard. The standard requires that the professor show he or she was (1) "disciplined or fired for speech that is a matter of public concern, and (2) [his or her] interest in the speech outweighed the university's interest in regulating the speech." *Buchanan v. Alexander*, 919 F.3d 847, 853 (5th Cir.) *cert. denied*, 140 S. Ct. 432 (2019).

### 1. Adverse Employment Action and Matter of Public Concern

It is undisputed that Plaintiff suffered an adverse employment decision. The Supreme Court has consistently held that "the nonrenewal of a nontenured public school teacher's[] contract may not be predicated on h[er] exercise of First . . . Amendment rights." *Perry v. Sindermann*, 408 U.S. 593, 598 (1972). Further, Defendants do not contest that Plaintiff's speech regarding confederate monuments, the global pandemic, and unions were matters of public concern. *See Branton v. City of Dall., Tex.*, 272 F.3d 730, 739 (5th Cir. 2001) ("Matters of public concern are those which can 'be fairly considered as relating to any matter of political, social, or other concern to the community'" (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983))). Importantly, however, that the content of the speech was a matter of public concern is not enough. "[I]nstead of asking only if the speech at issue was on a matter of public concern, a court must first decide whether the plaintiff was speaking as a citizen disassociated with [her] public duties, or whether the plaintiff was speaking in furtherance of the duties of his or her public employment." *Howell v. Town of Ball*, 827 F.3d 515, 522–23 (5th Cir. 2016) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)). Put differently, even if the employee spoke on a matter of public concern, there is no First

Amendment protection if that speech was "made in furtherance of a public employee's official duties." *Id.*

In determining whether Plaintiff's speech was made in furtherance of her official duties, the Court considers "whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 573 U.S. 228, 240 (2014). The Court may "review a number of factors" on this point, "including the internal versus external nature of the speech, the employee's formal job description, whether the employee spoke on the subject matter of his or her employment, and whether the speech resulted from special knowledge gained as an employee." *Harris v. Noxubee Cnty., Miss.*, 350 F. Supp. 3d 592, 599 (S.D. Miss. 2018) (citations omitted).

Plaintiff asserts three occasions in which she spoke on a matter of public concern: in supporting removal of confederate monuments in Dallas, raising concerns about the Collin College pandemic reopening plan, and in associating with a union. Defendants do not contend that Plaintiff's speech pertaining to confederate monuments or the union were made pursuant to her official duties. Rather, Defendants assert that Plaintiff's "speech concerned her own working conditions and duties in returning as a teacher when the College reopened its campuses to some in-person learning in the summer of 2020" (Dkt. #34 at p. 3). For this, Defendants conclude Plaintiff spoke in furtherance of her official duties when she sought to exert external pressure on Collin College regarding the plans to reopen. The Court disagrees.

Defendants take issue with Plaintiff's social media post asking followers to "consider emailing the college president, Dr. Matkin, and asking for a simple solution" regarding the Collin College reopening plans for the fall semester (Dkt. #9-2). How a campus navigates its pandemic procedures is "a subject on which [teachers] are uniquely qualified to comment." *San Diego v.*

*Roe*, 543 U.S. 77, 80 (2004). Supreme Court precedent "recognize[s] that speech by public employees on subject matter related to their employment holds special value precisely because those employees gain knowledge of matters of public concern through their employment." *Lane v. Franks*, 573 U.S. 228, 240 (2014).

Plaintiff has particular expertise in virtual learning; her knowledge became even more relevant when schools around the country were scrambling to finalize plans for the fall 2020 semester after a spring and summer derailed by the global pandemic. To be sure, Plaintiff served on the Council and had duties related to this role that required her to represent her colleagues and recommend solutions to the Collin County administration. Pursuant to these duties, Plaintiff worked with other Council faculty members to propose a resolution regarding the fall 2020 semester. But Defendant Matkin rejected this resolution, and Plaintiff's concerns, as well as those of her colleagues, remained. Plaintiff's post on social media was made in dissenting response to the college's decision to go forward with a different reopening plan, which could not have been made in furtherance of any of her official duties.

Indeed, there is a meaningful distinction between speech *about* official duties and speech *in furtherance of* those duties. Defendants' own arguments highlight this distinction. Defendants aver that Plaintiff spoke in furtherance of her official duties because "Plaintiff's alleged speech concerned issues related to her own workplace" (Dkt. #9 at p. 13). In the same vein, Defendants contend that Plaintiff failed to comply with Collin College policies when she went outside of "administrative channels of communication with respect to operational issues affecting [her] job" (Dkt. #9 at p. 14). If Plaintiff failed to comply with the college's policies by publicly engaging in speech about the Collin College plans to reopen, Plaintiff could not have, therefore, also been commenting in furtherance of her official duties as a professor or Council representative. As a

Collin College professor and expert in virtual learning, Plaintiff was a "member[] of [the] community most likely to have informed and definite opinions as to how" the campus should navigate its reopening during the COVID-19 pandemic. *Pickering v. Bd. of Ed.*, 391 U.S. 563, 572 (1968); *Lane*, 573 U.S. at 240. Although Plaintiff "raise[d] complaints or concerns up the chain of command at [her] workplace about [her] job duties," she also took her "job concerns to persons outside the workplace." *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008). Plaintiff made these "external communications . . . as a citizen, not an employee." *Id.*

### 2. *Pickering-Connick Balancing*

Next, the Court determines whether Plaintiff's "interest in the speech outweighed the [college's] interest in regulating the speech." *Buchanan*, 919 F.3d at 853. Plaintiff contends that her "interests in speaking on matters of public concern outweigh the College's interest in efficiency" (Dkt. #22 at p. 29). Defendants respond to this argument to assert that the balancing test becomes particularly relevant when the Court considers the "clearly established law" prong of qualified immunity (Dkt. #24 at pp. 4–5).

The Court finds that, viewed in the light most favorable to Plaintiff, the evidence establishes that Plaintiff's interest in her speech outweighed Defendants' interest in regulating it. For one "[t]here is considerable value . . . in encouraging, rather than inhibiting, speech by public employees," *Lane*, 573 U.S. at 236, as "[g]overnment employees are often in the best position to know what ails the [employers] for which they work." *Waters v. Churchill*, 511 U.S. 661, 674 (1994) (plurality opinion). The value is two-fold, stemming from both "the public's interest in receiving informed opinion" as well as "employee's own right to disseminate it." *San Diego*, 543 U.S. at 82. And second, Defendants have offered the Court no argument nor pointed to evidence that would tilt the balance in their favor. "The indispensable predicate to balancing . . . is evidence

from the public employer of actual or incipient disruption to the provision of public services. . . . Without such evidence, 'there simply is no countervailing state interest to weigh against the employee's First Amendment rights.'" *Grogan v. Lange*, 617 F. App'x 288, 291 (5th Cir. 2015) (quoting *Vojvodich v. Lopez*, 48 F.3d 879, 884 (5th Cir. 1995)).

### 3. Motivating Factor

Lastly, the Court considers whether Plaintiff has sufficiently shown that her protected speech motivated the Defendants' actions, which remains a question of disputed fact. After a plaintiff shows that her protected speech was a motivating factor in the adverse employment decision, a defendant has the opportunity of showing, by a preponderance of the evidence, that it would have taken the same adverse employment action regardless. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

Plaintiff has sufficiently shown that her protected speech was a motivating factor in Defendants' nonrenewal of her teaching contract. Plaintiff and Defendants provided evidence of Plaintiff's excellent teaching record at Collin College and evidence that Defendant Jenkins believed Plaintiff had "demonstrated several characteristics of an excellent faculty member throughout her employment (Dkt. #22 at p. 13). It was not until Plaintiff became vocal about her stances on Collin College's COVID-19 reopening plans and Plaintiff's association with a union that Defendants denied her contract renewal. Further, the only two senior administrators who declined to approve Plaintiff's contract renewal are those that had expressed disapproval of the Council's COVID-19 resolution proposal and the local union chapter—the Defendants. This is more than enough evidence for Plaintiff to meet her burden. Although Defendants offer the conclusory assertion that Plaintiff's speech was not a motivating factor in their nonrenewal decision, the Court accepts the facts in light of Plaintiff's proffered version of events. The facts

are supported by evidence, and in the Fifth Circuit, "summary disposition of the causation issue in First Amendment retaliation claims is generally inappropriate." *Haverda v. Hays Cnty.*, 723 F.3d 586, 599 (5th Cir. 2013).

For all the foregoing reasons, the Court finds that Plaintiff has met her burden of establishing evidence that could support a jury's finding that Defendants retaliated against Plaintiff for her protected speech, in violation of the First Amendment.

### B. Freedom of Association

Expressive association recognizes "associational rights derivative of the First Amendment rights of speech, assembly, petition for redress of grievances, and exercise of religion." *Hobbs v. Hawkins,* 968 F.2d 471, 482 (5th Cir. 1992). Association with a union is considered expressive association under the First Amendment. *See Thomas v. Collins*, 323 U.S. 516, 532 (1945).

To establish a constitutional claim for retaliation against the exercise of freedom of association with a union, Plaintiff must show: 1) she suffered an adverse employment action; 2) her interest in associating with the union "outweighed the Defendants' interest in promoting efficiency"; and 3) her association with the union motivated the adverse employment action. *Breaux v. City of Garland*, 205 F.3d 150, 156 (5th Cir.), *cert. denied*, 531 U.S. 816, (2000). Plaintiffs' association with the union must have been "a substantial or motivating factor in the adverse employment action." *Hitt v. Connell*, 301 F.3d 240, 246 (5th Cir. 2002).

Evident from these elements, "[t]he only difference between the requirements for a retaliation claim predicated on free speech and one predicated on free association is that the latter 'is not subject to the threshold public concern requirement.'" *Breaux*, 205 F.3d at 157, n.12 (quoting *Boddie v. City of Columbus, Miss.*, 989 F.2d 745, 747 (5th Cir. 1993)). Accordingly,

Plaintiff has met her burden of establishing evidence that could support a jury's finding that Defendants retaliated against Plaintiff for her expressive association. *See id.*

## II. Clearly Established

Having found that Plaintiff met her burden of showing a violation of a constitutional right, the Court now turns to consider whether "the right at issue was clearly established at the time of the violation." *DePree*, 588 F.3d at 287. At this juncture, Plaintiff's version of any disputed facts must "constitute a violation of clearly established [constitutional] law." *Joseph*, 981 F.3d at 330. Plaintiff submits that Defendants violated clearly established law by nonrenewing her contract due to her association with a union and protected speech. Defendants aver that Plaintiff "cannot 'identify a case' in which 'an officer acting under similar circumstances [as Defendants] were held to violate [the First Amendment]" (Dkt. #9 at p. 14 (quoting *Joseph*, 981 F.3d at 330)).

"The law is considered clearly established if the contours of the right asserted are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Tompkins*, 26 F.3d at 606 (citing *Texas Faculty Ass'n v. Univ. of Tex. at Dall.*, 946 F.2d 379, 389 (5th Cir. 1991)); *see also Lytle v. Bexar Cnty.*, 560 F.3d 404, 410 (5th Cir. 2009) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."). A plaintiff is not required to produce "a case directly on point," *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011), but the court must "be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Bevill v. Fletcher*, 26 F.4th 270, 279 (5th Cir. 2022) (quoting *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013)).

"The central concept" underlying the current scope of qualified immunity "is 'fair warning.'" *Cooper v. Brown*, 844 F.3d 517, 524 (5th Cir. 2016) (first quoting *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011) (en banc); then citing *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012)). "The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the [c]ourt, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Id.* (quoting *Newman*, 703 F.3d at 763).

In determining whether Plaintiff's rights were clearly established at the time of the alleged violation, the Court separately considers both asserted rights.

### A. Expressive Association

Plaintiff asserts that clear law establishes First Amendment protections around an employee's union activities. Defendants urge a much narrower view for how the Court should consider the clearly established law, insisting "Plaintiff [] cannot identify a case" that factually mirrors the case presently before the Court. The Court declines to take such a rigid approach, particularly because, as discussed below, the First Amendment protections afforded to union activity have been clearly established for decades.

"The right to organize collectively . . . is [] a fundamental right." *United Steelworkers of Am., AFL-CIO v. Univ. of Ala.*, 599 F.2d 56, 61 (5th Cir. 1979) (citing *Thomas v. Collins*, 323 U.S. 516 (1945)). Supreme Court, Fifth Circuit, and persuasive case law consistently hold that "the first amendment is violated by state action whose purpose is either to intimidate public employees from joining a union or from taking an active part in its affairs or to retaliate against those who do." *Pro. Ass'n of Coll. Educators, TSTA/NEA v. El Paso Cnty. Cmty. Coll. Dist.*, 730 F.2d 258, 262 (5th Cir. 1984).

16

This right extends explicitly to public teachers. In 1989, the Supreme Court "affirm[ed] the Fifth Circuit[']s holding that a "policy limiting the rights of teachers to communicate with each other concerning employee organizations and union activities" was "unconstitutional." *Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 786–93 (1989) (internal citations omitted). Even in cases where "discrimination has not extended to actual discharge," the Supreme Court has found a First Amendment violation because "teachers possess constitutionally protected rights of free association and [] section 1983 provides a remedy against state interference." *Smith v. Ark. State Highway Emp's. Loc. 1315*, 441 U.S. 463, 464 (1979) (citing *McLaughlin v. Tilendis*, 398 F.2d 287 (7th Cir. 1968)). In support of its holding in *Smith*, the Supreme Court concluded:

> The [F]irst [A]mendment protects the right of an individual to speak freely, to advocate ideas, to associate with others, and to petition his government for redress of grievances. And it protects the right of associations to engage in advocacy on behalf of their members. The government is prohibited from infringing upon these guarantees either by a general prohibition against certain forms of advocacy or by imposing sanctions for the expression of particular views it opposes.

*Id.*; *see also Ala. State Fed'n of Tchrs., AFL-CIO v. James*, 656 F.2d 193, 197 (5th Cir. 1981).

Indeed, other circuits have recognized that "[t]he unconstitutionality of retaliating against an employee for participating in a union was clearly established" decades ago. *Morfin v. Albuquerque Pub. Sch.*, 906 F.2d 1434, 1439 (10th Cir. 1990). And although "Supreme Court precedent" makes "clear that a public employer may not constitutionally prohibit its employees from joining together in a union, or from persuading others to do so," the rights to associate with a union are much broader. *Roberts v. Van Buren Pub. Sch.*, 773 F.2d 949, 957 (8th Cir. 1985) (citing *Ark. State Highway Emp's. Loc. 1315 v. Kell,* 628 F.2d 1099, 1102 (8th Cir. 1980) (relying on *Smith,* 441 U.S. 463).

Specifically, the Eighth Circuit, has found a "nonrenewal decision" unconstitutional when that decision "may have been influenced by [] union activities," such as "the posting of notices on

the bulletin board in the teachers' lounge, the distribution of pamphlets and other information, the collection of dues, and the handling of inquiries concerning the credit union." *Id.* (reasoning "the right of union membership would be meaningless unless an employee's right to participate in union activities were also recognized"); *see also, e.g.*, *Carter v. Kurzejeski,* 706 F.2d 835, 838 (8th Cir. 1983) (employees held leadership positions in union, filed numerous unfair labor practice complaints, and participated in grievance proceedings); *El Paso Cnty. Comm. Coll.*, 730 F.2d at 262; *Columbus Educ. Assoc. v. Columbus City Sch. Dist.*, 623 F.2d 1155, 1159 (6th Cir. 1980) ("[A] reprimand to retaliate against the zealous representation by a union spokesperson of a member's grievance impermissibly infringes upon the constitutional right of free association.").

Moreover, the Tenth Circuit has held that a plaintiff's "right to association was violated because her termination was in retaliation for her activities as faculty representative" of a union. *Saye v. St. Vrain Valley Sch. Dist. RE-1J*, 785 F.2d 862, 866–67 (10th Cir. 1986). In so holding, the Tenth Circuit instructed that "[t]he right to participate in union activities may be abridged by a state employer only when the limitation is narrowly drawn to further a substantial state interest. *Id.* at 867 (citing *Key v. Rutherford,* 645 F.2d 880, 885 (10th Cir. 1981)). Along similar lines, the Fifth Circuit has repeated that "substantial interference with the educational process is a basis for restricting the exercise of First Amendment freedoms" but that "disagreement with the philosophy being expressed is emphatically not." *Hall v. Bd. of Sch. Comm'rs of Mobile Cnty., Ala.*, 681 F.2d 965, 972 (5th Cir. 1982) (cleaned up).

Plaintiff here provides evidence that Defendants' nonrenewal decision may have been motivated by her union activities. Such activities include Plaintiff's general membership within the union, Plaintiff's leadership role in the union, Plaintiff's efforts to advertise the union at a Collin College faculty meeting, and the union's proposal for a panel presentation at a Collin

College College's Faculty Development Conference. Plaintiff never received official reprimand until she joined the union. Further, and notably, Defendant Jenkins specifically prohibited mention of the union at the faculty meetings, and she removed the union's panel slot for the development conference after it had already been approved and scheduled.

While a genuine issue of material fact exists as to whether Plaintiff's union association motivated Defendants' nonrenewal decision, the facts viewed in the light most favorable to Plaintiff indicate that her nonrenewal constituted retaliation in violation of clearly establish First Amendment precedent. Accordingly, the Court finds that Defendants had "fair warning" that their nonrenewal of Plaintiff's contract violated Plaintiff's First Amendment right to associate with a union and engage in union activities. *Cooper*, 844 F.3d at 524. However, it is for the jury to determine whether Plaintiff's association with the union motivated Defendants' nonrenewal decision. *See, e.g.*, *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding "the court must determine whether, assuming the truth of the plaintiff's allegations, the official's conduct violated clearly established law" for resolving the "threshold question" of qualified immunity); *Zuniga v. Yeary*, No. 1:18-CV-434-RP, 2020 WL 1329908, at *4 (W.D. Tex. Mar. 20, 2020) ("[T]he Fifth Circuit has emphasized that 'summary disposition of the causation issue in First Amendment retaliation claims,' the fourth prong, 'is generally inappropriate.'" (quoting *Haverda*, 723 F.3d at 595)).

### B. Speech

Next, the Court considers whether the law pertaining to Plaintiff's free speech claim was clearly established at the time of Defendants' nonrenewal decision. As mentioned, Plaintiff asserts three distinct instances of speech that unconstitutionally motivated Defendants' nonrenewal decision: her support of removing confederate monuments in Dallas, her external disapproval

19

regarding Collin College's pandemic reopening plan, and speech related to her union activities. Neither Plaintiff nor Defendants offer substantive arguments regarding Plaintiff's speech related to the removal of confederate monuments. For this, and because the Court already determined that First Amendment retaliation in response to union activities was clearly established, the Court focuses on Plaintiff's spoken disapproval of Collin College's pandemic reopening plan.

Plaintiff avers that, at the time of her nonrenewal, the law clearly established that speech related to the "ongoing global pandemic" was protected under the First Amendment. Again, Defendants urge a narrower view, arguing that Plaintiff cannot identify a case on point that demonstrates clearly established law in this area. Once again, the Court declines to take such a rigid approach because "[t]he law can be clearly established despite notable factual distinctions between the precedents relied on and the case[]" currently at issue. *Cooper*, 844 F.3d at 524. Instead, the Court contemplates whether "prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Id.*

As an initial matter, it is important to recognize that Defendants do not contest that Plaintiff's speech regarding the college's pandemic reopening plan was a matter of public concern. Rather, Defendants' efforts go toward arguing that Plaintiff's speech in this context was made in furtherance of her official duties. This argument is dead on arrival. No reasonable official could argue that a professor acts in her official duties when calling for other private citizens to protest against a university's response to a public health crisis. As discussed, Defendants themselves argue against their own point, taking issue with Plaintiff's "fail[ure] to work collaboratively through shared governance using administrative channels of communication" (Dkt. #9 at p. 5). In other words, Defendants by their own admission fired Plaintiff in part for using her private social media

20

account to inform the public about a matter of public concern. As reasoned more thoroughly blow, this is clearly unconstitutional.

Broadly, "First Amendment rights, applied in light of the special characteristics of the school environment, are available to teachers and students." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969). More specifically, the Fifth Circuit has recognized that "the physical safety and well-being of [] school children is [] important an issue for public scrutiny." *Swilley v. Alexander*, 629 F.2d 1018, 1021 (5th Cir. 1980). While this case does not involve public school *children*, the point stands that:

> the more important the subject matter is to the public, the sharper the reaction will be by those whose conduct may be called into question. It is precisely the probability of oppressive over-reaction by the powers that be which requires our constant vigilance of the First Amendment protections accorded all public employees.

*Id.* "The public import of" Plaintiff's post "is underscored by its context: it was sent at a time when COVID-19 had caused a statewide public health emergency and had been declared a pandemic." *Woolslayer v. Driscoll*, No. CV 20-573, 2020 WL 5983078, at *4 (W.D. Pa. Oct. 8, 2020). With this backdrop, the Court concludes it is beyond debate that stopping the spread of COVID-19 was a matter of public importance in fall 2020.

It is also beyond debate that when a public employee engages in protected speech, it is immaterial that social media serves as the vehicle for such speech. "[S]ocial networking sites like Facebook have [] emerged as a hub for sharing information and opinions with one's larger community." *Liverman v. City of Petersburg*, 844 F.3d 400, 408 (4th Cir. 2016) (holding that "[i]n light of the First Amendment protection accorded to the [social media] posts . . . the discipline [plaintiffs] received pursuant to the social networking policy was unconstitutional"). "Terminating an employee for engaging in protected speech . . . is an objectively unreasonable violation of such

an employee's First Amendment rights," *Charles v. Grief*, 522 F.3d 508, 511 (5th Cir. 2008), even if that speech is expressed through social media. *See Zuniga v. Yeary*, No. 1:18-CV-434-RP, 2020 WL 572724, at *6 (W.D. Tex. Feb. 5, 2020), *report and recommendation adopted*, No. 1:18-CV-434-RP, 2020 WL 1329908 (W.D. Tex. Mar. 20, 2020), *appeal dismissed*, No. 20-50326, 2020 WL 9310321 (5th Cir. Sept. 15, 2020) (denying motion to dismiss where plaintiff alleged that defendant "terminated [her] because she expressed those views on Facebook" and that her employer "regularly gave [plaintiff] strong, positive feedback about her performance" and "never wrote [her] up or disciplined her during her many years of employment").

Applying these clearly established principles, the Court finds that, at the time of Defendants nonrenewal decision, Plaintiff had a clearly established right to use her private social media account as a vehicle for engaging the public in a governmental response to a matter of public concern. Plaintiff provides evidence that Defendants' nonrenewal decision may have been motivated by her speech in opposition to the college's fall 2020 plans to reopen. Notably, both Defendants specifically cite Plaintiff's "indirect means to exert external pressure on the college to not reopen as planned and to challenge operational decisions" as a reason for her nonrenewal (Dkt. #9 at p. 4). Accordingly, the Court finds that Plaintiff's claims of retaliation in violation of her First Amendment rights to speech and association survive Defendants' motion for summary judgment.

## CONCLUSION

It is therefore **ORDERED** that Defendants H. Neil Matkin and Toni Jenkins' Motion for Summary Judgment on Qualified Immunity, filed in Defendants' individual capacities (Dkt. #9) is **DENIED**.

**IT IS SO ORDERED**.

 **SIGNED this 25th day of August, 2022.**


AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE